## In re GABRIEL.

### GABRIEL et al. v. GABRIEL.

(Supreme Court, Appellate Division, Second Department. October 3, 1899.)

1. EXECUTORS AND ADMINISTRATORS—ACCOUNTING—EVIDENCE.

In a proceeding to surcharge an account filed by executors, where one of them is called as a witness for the contestant, to testify concerning transactions with the property of the estate, it is not competent for him to state on cross-examination "why" a certain item of money, alleged to be wrongfully omitted from the account, was omitted, since, if properly chargeable, his reasons for leaving it out could not affect the result.

2. SAME—TRANSACTIONS WITH DECEDENT.

In a proceeding to surcharge an account filed by executors, where they are called as witnesses as to transactions with the property of the estate, a ruling that either of them may produce any available testimony to account for sums of money alleged to be improperly omitted from their account, but not as to transactions between them and the decedent, is not erroneous, under Code Civ. Proc. § 829, prohibiting a party from testifying concerning transactions with a deceased person except in certain cases.

3. SAME—COSTS—PERSONAL LIABILITY OF EXECUTORS.

Where an account filed by executors has been surcharged, and the testimony shows gross mismanagement of the estate, and that the items improperly withheld are large, indicating an intention on their part to appropriate such sums to their own use, the costs of the proceedings are properly chargeable to the executors personally, under Code Civ. Proc. §§ 2557, 2558, providing that costs may be payable by the party personally, or out of the estate, as justice may require, in the discretion of the surrogate.

Appeal from surrogate's court, Kings county.

In the matter of the settlement of the account of Joseph Gabriel and another as executors of the will of Catharine Gabriel, deceased. From a decree surcharging the account, the executors appeal. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

J. Stewart Ross, for appellants.
Henry Schmitt, for respondent.

HATCH, J. It is not necessary for us to examine in detail the evidence from which the learned referee reached his conclusion that the accounts of the executors should be surcharged with the items of money and property received for which they have rendered no

account.  The learned surrogate adopted the conclusions of the referee, and entered the decree charging to the executors the several items, and personally the costs of the proceeding.  The very full and complete discussion which accompanied the report of the referee leaves nothing to be said in support of the reasons which induced him to hold the executors liable for the amounts with which their account is surcharged.  His conclusion in this regard has abundant support in the testimony, and, after a careful reading of the record and the brief submitted by the learned counsel for the executors, we not only see no reason for disagreeing with the conclusion of the learned referee, but are confirmed in the view that such conclusion is correct.  It only remains for us to see if any error has been committed in the admission of testimony which calls for a reversal of the decree, or whether any error or injustice has been committed in charging the executors personally with costs.

The case in favor of the contestant was in large measure made up by the testimony of the executors themselves, whom the contestant was obliged as well as entitled to call to give evidence concerning their transactions with the property of the estate.  The largest item in the account was a sum of $4,000, the proceeds of a certain mortgage which was paid just prior to the death of the testatrix.  At the time of such payment the testatrix was bedridden, nearly blind, and clearly unable to transact any business.  The executors were at that time, and had been for some time prior thereto, taking charge of the estate, and performing such acts in connection therewith as were by them deemed necessary for its preservation.  The $4,000 was traced into the hands of the executor Joseph Gabriel, and from that time, so far as appeared in any deposit in the bank or in any account or written memorandum, this money disappeared.  Upon cross-examination of Joseph Gabriel, he was asked:  "You testified that upon your father's death he had in his possession a mortgage made by Mr. Schlitz for four thousand and odd dollars, and you further testified that that mortgage was not mentioned in your account filed in this proceeding.  Now, will you please state why?"  This was objected to as irrelevant and incompetent, and also for the reason that it was an attempt to draw out a personal transaction with the deceased, and was therefore improper, under section 829 of the Code of Civil Procedure.  The objection was overruled, and the witness answered, "It was paid to my mother by Mr. Schlitz."  Counsel for contestant thereupon moved to strike out the answer, the motion was granted, and counsel for the executors excepted.  It is now claimed that this ruling was error.  We think otherwise, for two reasons:  First, the question itself was improper, and called for incompetent testimony.  What his reasons were for not putting these items into the account was not material.  If any testimony upon this subject was proper, it should have been directed to the property which the executor had received from the estate; and, as the $4,000 item was then under consideration, it was competent and proper to show any facts which established that such item was not a proper one with which he should be charged.  His reasons for not putting it into the account were of no consequence, if he showed

that he was not properly chargeable with that item; and the reasons why he left it out, if he was so chargeable, could not possibly affect the result. The objection might properly have been sustained upon this ground. It may be conceded that the ruling was erroneous in so far as it struck out the answer of the witness that the money was paid to his mother by Mr. Schlitz, the mortgagor. If the transaction had been that the mortgagor paid the money to the mother during her lifetime, it would have been competent for the executor to so testify, as it would not involve a personal transaction with the deceased. But, if we assume that the testimony was improperly stricken out, no prejudice therefrom resulted to the executor, as subsequently the whole transaction with respect to the payment of the $4,000 was developed. The testimony of the executor Gabriel himself shows that, while the money was paid during the lifetime of the mother, yet he in fact received the same, and he was permitted to testify that he gave that sum to his mother. This last was clearly a personal transaction, and is not competent; but it was received without objection, and remains in the record as part of the testimony. Consequently no prejudicial error can be predicated of this ruling.

It is undoubtedly the rule of law that testimony may be received of a personal transaction between a deceased person and a person sought to be charged, where such testimoy tends to qualify or explain evidence theretofore received which has been drawn out by the examination in chief, and which forms a part of the whole transaction. Such is the case of Nay v. Curley, 113 N. Y. 575, 21 N. E. 698, and other kindred cases. Such rule cannot find application here, either as to the ruling now under consideration, or as to similar rulings where the same question was raised as to this witness and his co-executor. The executors themselves, in so far as they were sought to be charged with the respective sums with which the decree charges them, were witnesses in hostility to the contestant; and therefore he should not be held concluded, as having opened the door to such testimony, unless he comes clearly within the exception which would entitle the executors to give in evidence their personal transactions with the deceased. Here no such condition existed. The $4,000 item, its source, and its payment, were established clearly and beyond dispute by testimony independent of the executors, and by the executor Joseph Gabriel himself. He was permitted to testify to any memorandum, to any deposits, or to any entry in any book which would show or tend to show what became of the $4,000. He had testified, and the evidence was clear beyond dispute, that at the time when this money was received his mother was in a physical condition which incapacitated her for the transaction of business, and he and his sister, the co-executor, had the custody, control, and management of the property. The referee ruled constantly, consistently, and continuously throughout the case, that either executor might produce any testimony which was available to them to account for this sum of money or any other, with the single exception that he excluded the personal transaction had between the deceased and the executors in respect thereto. But it is clear, in all of the

instances where such ruling was made, that the testimony was incompetent, under section 829 of the Code, and in no case are we able to find by the course of the direct examination that the door was so far opened as would permit such testimony to be received.

So far as these rulings have been urged before us as constituting error in refusing to permit the co-executor Mrs. Fritz to testify are concerned, the same observations which we have heretofore made as to Joseph Gabriel's testimony apply to her case. In the ruling claimed to be erroneous, Mrs. Fritz was permitted to, and did, testify that the items of money with which she was sought to be charged did not come to her hands; and it was only as to the personal transaction with the deceased that she was restrained from answering. We find, therefore, no error in the rulings of the referee in this regard.

Nor was the testimony sought to be elicited from Mrs. Fritz available as showing the creation of a trust for distribution among the poor of the moneys in the savings bank, or for any other purpose. It is quite clear that the evidence which was permitted to be received as tending to establish a trust of these moneys would not be sufficient to create a trust, especially in view of the fact that it was conceded that the property of the testator came from her husband, and that she desired to distribute it among the children, share and share alike, for the purpose of carrying out his wishes in respect to its disposition. Under such circumstances, it would require clear and convincing proof, before the court would be authorized to support a trust of a part of such moneys, where the will made clear disposition of all the property. But no trust of these moneys could be established, except it be based upon some direction given by the testatrix to Mrs. Fritz; and that would clearly constitute a personal transaction, as much as would any other direction made by her for the disposition of the moneys. The reason for putting the bank book in the name of the testatrix and Mrs. Fritz, as the referee has found, was clearly for the purpose of convenience, and not with any intent to create a trust; nor did such act have the effect of creating one, within the authorities cited by the referee. Consequently, in no view of the case could the testimony of Mrs. Fritz as to the personal transactions with her mother be received.

We reach the conclusion, therefore, that no errors—certainly none of substance—were committed by the referee in the rejection of testimony, and we also think that the conclusion reached by him was eminently fair and just.

The only remaining question to be considered is the determination by the learned surrogate which charged the executors personally with the costs of the proceeding. No one can read the testimony without being impressed with the fact that these executors have been grossly negligent in the management of this estate, and this states the matter in as mild terms as the case will permit. The items which were withheld from the account, and which properly belong to this estate, were of substantial amounts; and the surrogate would have been justified in concluding that the executors intended to appropriate these sums to their own use, and withhold them from those

to whom they properly belonged. Under such circumstances, the surrogate was justified in charging the costs and expenses of the proceeding upon the executors personally. Code Civ. Proc. §§ 2557, 2558; In re Mull's Estate (Sur.) 2 N. Y. Supp. 23; Kearney v. McKeon, 85 N. Y. 136.

It follows that the decree of the surrogate should be affirmed.

Decree of surrogate's court affirmed, with costs. All concur.