FLYNN et al. v. JUDGE.

(Supreme Court, Appellate Division, Second Department. February 2, 1912.)

1. TRIAL (§ 165*)—DISMISSAL—EVIDENCE:
    On the question of propriety of dismissal at the close of plaintiffs' case, every fair intendment on the evidence must make for them.
    [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 373, 374; Dec. Dig. § 165.*]

2. ATTORNEY AND CLIENT (§ 129*)—NEGLIGENCE OF ATTORNEY—DAMAGES.
    The only damages claimed from negligence of an attorney being loss in money, the measure thereof is the difference in the pecuniary position of the client from what it would have been had there been no negligence.
    [Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 291; Dec. Dig. § 129.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. ATTORNEY AND CLIENT (§ 109*)—NEGLIGENCE—DAMAGES.

One removed from the position of executor and trustee cannot recover of his attorney for loss of commissions, on the ground that his removal was due to the attorney's negligence, it being uncertain whether he would have otherwise had commissions, they not being a matter of right, but of discretion, besides being almost impossible to lay his removal entirely to the fault of the attorney, the chief concern of the court in removals being the safety of the trust.

[Ed. Note.—For other cases, see Attorney and Client, Dec. Dig. § 109.*]

4. ATTORNEY AND CLIENT (§ 109*)—LIABILITY OF ATTORNEY.

If the charging personally to executors and trustees, contrary to the general rule, of the expenses of their accounting, is shown to be due to the lack of due skill, care, and diligence of their attorney, in respect to the account, he is liable to them for such damage.

[Ed. Note.—For other cases, see Attorney and Client, Dec. Dig. § 109.*]

5. ATTORNEY AND CLIENT (§ 129*)—NEGLIGENCE—EVIDENCE.

Evidence, in an action by clients against their attorney as to the charging against them personally of their expenses of their accounting as executors and trustees having been due to his lack of due skill, care, and diligence, in respect to the account, held sufficient to save them from a dismissal.

[Ed. Note.—For other cases, see Attorney and Client, Dec. Dig. § 129.*]

6. ATTORNEY AND CLIENT (§ 112*)—LIABILITY OF ATTORNEY—BAD ADVICE.

An attorney would be liable for damages to his clients from his advice to one of them to testify falsely in a matter committed to the attorney's legal guidance.

[Ed. Note.—For other cases, see Attorney and Client, Dec. Dig. § 112.*]

Appeal from Trial Term, Kings County.

Action by Mary C. Flynn and others against John C. Judge. From a judgment of dismissal, plaintiffs appeal. Reversed, and new trial granted.

See, also, 131 N. Y. Supp. 1115.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, WOODWARD, and RICH, JJ.

J. Delahunty (S. P. Cahill, on the brief), for appellants.

John C. Judge (Frank C. McKinney, Raymond D. Thurber, and George I. Woolley, on the brief), for respondent.

PER CURIAM. The plaintiffs' appeal is from a judgment that dismissed them as to the first and second causes of action. The third cause of action was eliminated by adjustment. A decree of the Surrogate's Court removed the plaintiffs as executors and trustees of the estate of their father. The defendant for a time was their attorney and counsel. The first cause of action alleges generally defendant's lack of due care, skill, or diligence in the matters submitted to his advice or intrusted to his charge in relation to the administration of the estate. It also specifies instances thereof and charges that, in consequence of these acts and others on the part of the plaintiffs in their representative capacities, there was revocation of their letters and removal of them. It alleges that they had suffered and would suffer great damage and will be deprived of their yearly commissions as executors and trustees, and by reason of the premises the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

damages are and will be $10,000. The second cause of action alleges lack of due care, skill, and diligence in the preparation, presentation, and in matters relating to the proceedings to settle judicially the accounts of the executors so that the account presented was futile and of no benefit to the plaintiffs, but of great loss and damage to them, in that they were compelled to pay the entire costs of the proceedings and deprived of their commissions and of their costs and allowances to the amount of $1,904.79.

The theory of the action is negligence. At trial the learned counsel for the plaintiffs said that they were "merely claiming for bad legal advice," and again:

"I know of no reason why Mr. Judge should be charged with dishonesty. I am not charging him with dishonesty."

And in his points on this appeal his contention is that all of the acts of misconduct which the surrogate found against the plaintiffs in his decree of removal and revocation were "due solely to the advice of the defendant."

[1, 2] Upon the determination of this appeal, which challenges the propriety of dismissal at the close of plaintiffs' case, every fair intendment arising upon the evidence must make for them. The burden was upon them to prove the breach of duty and the amount of damages, and they could only recover the damages thus proved. Vooth v. McEachen, 181 N. Y. 28, 73 N. E. 488. At trial the counsel for the plaintiffs admitted that the only damages alleged were loss of commissions and moneys chargeable to the plaintiffs by the surrogate, costs of the action, and interest and return of counsel fees which they had paid, and other sums of that character—for the moneys which they were obliged to pay into the estate. Under such circumstances, the measure of damages is the difference in the pecuniary position of the client from what it should have been had the attorney acted without negligence. Bevan on Negligence in Law (3d Ed.); Wood's Mayne on Damages (1st Am. Ed.) § 648; Codery on the Law Relating to Solicitors, 134; Weeks on Attorneys at Law (2d Ed.) § 319. The last writer says:

"In actions against attorneys for negligence or wrongs, the debt lost and cost sustained through their negligence furnish, when the action can be maintained, the obvious measure of damages, where this measure definitely exists. In other cases the plaintiff is entitled to be in the same position as if the attorney had done his duty."

[3] So far as the damages relate to the alleged loss of commissions past and prospective, we think that the dismissal of the plaintiffs should be affirmed. Those damages are too uncertain, not as to the amount, but as to their character. In the words of Grover, J., in Taylor v. Bradley, 4 Abb. Dec. 366:

"It is not an uncertainty as to the value of the benefit or gain to be derived from performance, but an uncertainty or contingency whether such gain or benefit would be derived at all."

Even if the professional advice of the defendant had been beyond hypercriticism, and the plaintiffs had continued in their representa-

tive capacities, there was no certainty that they might not have been deprived of commissions for reasons entirely foreign to the counsel and advice of their lawyer. Commissions are not a matter of right, but rest in discretion. Matter of Rutledge, 162 N. Y. 31, 56 N. E. 511, 47 L. R. A. 721; Matter of Welling, 51 App. Div. 355, 64 N. Y. Supp. 1025. Again, it would be almost impossible to lay the revocation and removal entirely at the door of the defendant. The chief concern of the court in removals is the safety of the trust. Jessup's Surrogate's Practice (3d Ed.) 1023. And in the opinion handed down by the learned surrogate it was said:

"Under nearly all of the tests suggested by the counsel for the executors and trustees, the relief prayed for should be granted. He concedes their utter inexperience of business and unfitness for their positions, and tenders this as an excuse for their mismanagement. In my opinion, there is *'a clear necessity* for interference' *to save the trust property* and such misconduct as to show want of capacity or fidelity putting the trust in jeopardy. Elias v. Schweyer, 13 App. Div. 336 [43 N. Y. Supp. 55]." (The italics are ours.)

[4] But the damages alleged in the second cause of action may be regarded in a different light. The plaintiffs upon accounting were charged personally with the expenses thereof, contrary to the general rule. The specific amount of their personal outlay is not hard to ascertain. If the plaintiffs can establish that this pecuniary loss was due to the lack of due care, skill, or diligence of the defendant as a lawyer, in the preparation, filing, and presentation of the account, we think that the defendant might be held liable. It is not enough, however, to rely upon the revocation of letters and removal, for the plaintiffs might have been charged personally none the less, even if they had been continued in these capacities (e. g. Matter of Gabriel, 44 App. Div. 623, 60 N. Y. Supp. 87, and cases cited, affirmed 161 N. Y. 644, 57 N. E. 1110; Matter of Harnett, 15 N. Y. St. Rep. 725; Matter of L. I. L. & T. Co., 92 App. Div. 5, 87 N. Y. Supp. 318). In the same opinion from which we have quoted heretofore, the learned surrogate also wrote:

"It is no answer to this application to say that in the end they filed verified accounts which were substantially correct. This was only accomplished by the strenuous efforts of counsel revealing the gross, and as to the executor, William J. Flynn, evidently willful inaccuracies of the original account, which he endeavored to sustain by confessed perjuries."

Reading those findings of the surrogate which relate more particularly to the account, we perceive that he lays stress upon the many delays and obstacles which were interposed by the executors so that the time that intervened the application for a compulsory accounting and the filing of the account was nearly six months; that in that account the plaintiffs omitted to account for or to charge themselves with the receipts of the testator's business (which they had continued) from October 18, 1897, to May 1, 1898, but credited themselves and charged against the general assets of the estate sums paid by them for purchases of stock in the conduct of said business and for the expenses of said business during said period of time aggregating upwards of $11,000; that they failed to account for certain amounts

received by them for debts due the testator at the time of his death, including one item from the Convent of Mercy amounting to $1,058.-38; that they failed and omitted to file proper vouchers in support of the payments and disbursements alleged to have been made by them; that in their account as trustees they credited themselves with disbursements which were also credited in their account as executors; that in neither account they charged themselves with any sums recovered by them or with which they were chargeable as and for interest and income on the personal estate in their hands except $50 for rent of fixtures and $150 interest on deposits; that in the account as executors they credited themselves with several items of alleged payments which had already been allowed them in an action for admeasurement of dower; and that it finally appeared that they should have had a balance of $12,000 as against a stated deficiency of $4,000 shown in the original account.

[5] The burden upon the plaintiffs in this branch of the case was to establish that the personal charges against them upon the accounting were due to the lack of due skill, care, and diligence of their attorney in and about the preparation, presentation, filing, and sustention of the account. There must appear such certainty as would satisfy the mind of a prudent and impartial person that the alleged shortcoming of the defendant was the cause of the charge against them. But the question upon this appeal is whether the plaintiff had given sufficient evidence or was halted improperly in offering relevant, material, and competent evidence which might have tended to establish this contention, so as to save themselves from dismissal. The features of the account which were accentuated by the learned surrogate could be traced to the omission of due care on the part of a legal adviser. Delay in the preparation and filing of the account, omissions therefrom, substantial affirmative errors therein, duplications with items in other accounts, wrongful advice in respect to the sustention thereof, are matters which might naturally be brought home to a legal adviser. And we think that there was sufficient evidence offered or improperly excluded which rendered the dismissal at the time thereof error. The learned trial court seemed to lose sight of the fact that the plaintiffs' claim for damages related *also* to their loss due to the charges against them *personally* upon their official accounting, and to regard the case solely from the viewpoint of the revocation of the letters and the removal and alleged consequent loss of commissions. We are led to this conclusion, not only by the expressions of the learned court, but by a ruling which must also be held erroneous. The witness Brady, who had been in the employ of the plaintiffs' testator, and who was retained by the plaintiffs when they continued their father's business for a time, who kept books wherein were entered receipts from the estate, and who rendered statements to the defendant, was asked upon his direct examination:

"Do you recall a claim, an amount due from the Convent of Mercy? A. I do. Q. Was that paid? A. Yes, sir; I believe that was paid. Q. Do you recollect whether that was in a statement which you furnished to Judge, the payment of that?"

This was met by a general objection. The court then said:

"I am simply not going to let you prove that in the account rendered Mr. Judge purposely left out charges or credits that he should have known belonged there, because it is not material, even if you establish that. Mr. Delahunty: I am not seeking to establish that he left them out purposely, but that he left them out negligently. The Court: I will not let you prove either. Mr. Delahunty: Then I except. The Court: The decree of the surrogate under which all your woes have arisen is not due to that. Mr. Delahunty: I except. The Court: They are due to other things, such as I have pointed out. The principal things were that this Mr. Flynn was guilty of perjury and that the other plaintiffs were incompetent."

We fail to see why the fact sought to be proved did not bear upon negligence in respect to the preparation of the account. It was a feature dwelt upon by the learned surrogate, as we have pointed out. The counsel for the defendant in their printed points write:

"The fifth and last specification of negligence is the drawing by the defendant of defective and misleading accounts. The evidence on this head is meager, but possibly sufficient to indicate that the defendant inadvertently omitted from the account essential items which had been furnished him by the plaintiffs, and that they relied upon its correctness when they signed it. Even if this is so, there is no evidence or claim that the defendant, any more than the plaintiffs, deliberately intended to present a false account. In fact, the plaintiffs' express admissions throughout the case acquit the defendant of any intentional misconduct. And no harm actually resulted to the estate, for the surrogate made the proper corrections before settling the account."

This is a concession to be considered not alone as to the question of intentional misconduct or of harm to the estate, but of the charge of costs personally upon the plaintiffs in the accounting. And there is another pertinent fact conceded at trial by defendant, that the amended account, which seems to have passed without objection, not prepared by the defendant, was made up from the same data as that supplied to the defendant. This circumstance might well bear upon the competency and care observed in the preparation of the account by the defendant.

[6] As to the alleged perjury, it seems that one of the executors, after being forced to the question, testified before a referee upon the accounting that the said witness Brady was a partner in the business continued, when he was not. One of the plaintiffs testified that she called the attention of the defendant to that bit of evidence, saying, "You know very well that Phillip Brady is not a partner of my brother's in that business," and the defendant said: "Yes, I know it. I told your brother to say so." The witness said, "Well, my brother must take that back," and the defendant said, "He can take it back on rebuttal." And there was evidence offered that a question and answer among a series prepared by the defendant for the executor on rebuttal did retract or explain that statement. When the offending executor was questioned on this subject, the court checked inquiry avowedly made to show that the original false statement was made upon the advice of the defendant. The learned court stated its view "that to allow the perjurer himself to sue the man who advised him to commit perjury, to recover damages, would be a most monstrous proposition."

Without quarrel with the soundness of the general proposition, and without considering a germane limitation in cases of fiduciary relation, it seems to us that the learned court lost view of the purpose and bearing of the testimony. The plaintiffs were not seeking to recover damages for a perjury of one of their number, from the inciter of the perjury. They sought to recover what they had been compelled to pay on account of a breach of defendant's obligation as an attorney and counselor at law; and their contention was that as an attorney he advised one of their number to testify falsely in a matter committed to his legal guidance. This was bad or improper advice, in violation of the obligation of the defendant under his retainer, and damage resulting therefrom might, we think, be actionable. See Gihon v. Albert, 7 Paige, 278; also Looff v. Lawton, 97 N. Y. 478–483. Justice to a reputable member of our profession makes it proper that we should accentuate the fact that we are not considering the character or the weight of the evidence as to this alleged perjury, but simply the relevancy of evidence adduced or attempted to be adduced by the plaintiff, without having before us any testimony on the part of the defendant as to the truth thereof. As we have said, we have but to consider whether the plaintiffs should have escaped dismissal; nothing more than this. We express no opinion upon the merits of the case beyond the precise question presented.

The judgment must be reversed, and a new trial be granted; costs to abide the event.