[Civ. No. 456. Fourth Appellate District.—September 28, 1931.]

JOHN GORDON McGREGOR, Appellant, v. LEROY A. WRIGHT et al., Respondents.

Jones, Stephenson, Palmer & Moore for Appellant.

Charles C. Crouch and Hamilton, Lindley & Higgins for Respondents.

ALLEN, J., *pro tem.*—The plaintiff appeals from a judgment of nonsuit as to both causes of action set out in the complaint.

It is alleged in the complaint that plaintiff was a resident of San Diego County and was highly respected and of high standing in the community, occupied a high position in and

had the confidence of the business world and was generally recognized in the community as a business man of the highest integrity and capability. That defendants were attorneys at law duly admitted to practice in the courts of California and the United States courts sitting in California; that such defendants were and are engaged in the practice of law as partners under the firm name of Wright, McKee and C. M. Monroe. On the twenty-sixth day of January, 1927, plaintiff was elected trustee in the matter of the bankruptcy of Stephens & Company, a bankrupt, then pending in the United States District Court for the Southern District of California. Such appointment was obtained by and on the recommendation of the defendants to the creditors of the bankrupt estate. Plaintiff duly qualified and entered upon the duties pertaining to such trust. Defendants, while attorneys for certain creditors of said bankrupt estate, represented to plaintiff that there would be no conflicting interests between these claimants and the bankrupt estate; that there would be no contest as to such claims and that defendants were free to accept employment from and to act as attorney for plaintiff in his capacity as trustee. Believing such representations, plaintiff employed the defendants in connection with another firm, who were regularly appointed as attorneys for the trustee under proper order of court. Defendants accepted and entered upon such employment and advised plaintiff pertaining to his duties as such trustee until a petition was filed in the United States District Court praying for the removal of plaintiff as such trustee, and that plaintiff believed the advice of said defendants and acted thereon. That during his term as such trustee, plaintiff was almost daily in conference with the defendants concerning the administration of said estate and his duties relating to such trusteeship and that defendants appeared as attorneys for plaintiff as trustee in certain litigated cases.

That in the administration of said estate it became necessary for plaintiff to make certain trips to Los Angeles, San Francisco and other places, thereby incurring expenses which were charged to the bankrupt estate. That plaintiff was advised by defendants that it was not necessary for plaintiff to keep an exact and detailed account of each item of such expense, but that in lieu thereof it would be sufficient

to charge plaintiff's actual expenses thereof in a lump sum, all of which plaintiff did. That defendants advised plaintiff that he was lawfully entitled to draw an allowance of $500 per month out of said estate to be applied upon his services. That plaintiff did, with the approval of the referee in bankruptcy, draw such sum each month. That the bankrupt estate was the owner of shares of stock in the Occidental Properties, Inc. That defendants advised plaintiff that he was lawfully entitled to advance certain moneys belonging to the bankrupt estate to said corporation and, acting upon such advice, plaintiff did advance a considerable amount of the money belonging to the bankrupt estate to carry on the business of the said Occidental Properties, Inc. That plaintiff undertook, as the special agent of said last-named company, to manage its business, believing it to be to the best interests of the bankrupt estate. That under such arrangement plaintiff was paid $250 per month as such special agent, all of which was done under the direction and advice of defendants. That defendants advised plaintiff that it would be lawful for plaintiff to purchase from the bankrupt estate certain personal property which the plaintiff had been unable to sell. Acting thereon, plaintiff did purchase the same, paying therefor the reasonable market value. That all of such advice was erroneous, contrary to law, and was carelessly and negligently given.

That subsequent to all of the above acts it is alleged that defendants, disregarding their obligations as attorneys for plaintiff, fraudulently and perfidiously colluded and connived to injure plaintiff and to cause his removal as trustee and to inflict upon plaintiff punishment and injury, and for the purpose of destroying plaintiff's reputation for honesty and integrity and to belittle and discredit plaintiff in his business and among his friends, prepared a petition for the removal of plaintiff as such trustee and procured the same to be signed and prosecuted by one Clarence W. Morris, an attorney at law. That defendants, in preparing such petition, alleged as causes therefor, the acts herein complained of, together with other acts which defendants had advised plaintiff were lawful for him to do, which acts were unlawful and contrary to law in the administration of the bankrupt estate and that on the hearing of said petition plaintiff

was removed as such trustee by reason of his acts performed under said advice.

That subsequent to such removal plaintiff made and filed a report of his accounts and doings as trustee and upon the hearing thereof by the referee the defendants, disregarding their obligations and in violation of their duties as attorneys for plaintiff, appeared by and through the defendant C. M. Monroe and contested the allowance of credits for various items claimed by plaintiff set out therein.

Plaintiff further alleges that by reason of the erroneous advice, fraud, double dealing and treachery of defendants he suffered a great nervous shock, was made sick and unable to attend to his business for many months; that he suffered greatly in his reputation for honesty and integrity; that he has been humiliated and disgraced, suffered financial loss and his credit has been impaired, to his damage in the sum of $100,000.

The second cause of action is the same as the first except that it is alleged the advice was given wilfully and with knowledge that it was wrong.

The answer of defendants admits that they are attorneys at law, admitted to practice as alleged. They admit that as attorneys, they represented certain creditors against the bankrupt estate; that the law firm of Gray, Cary, Ames & Driscoll was appointed and acted as attorneys for the trustee in bankruptcy in the administration of said estate; admit that plaintiff as trustee frequently conferred with defendants concerning certain features of the administration of the bankrupt estate such as the collection of assets. Deny that they acted as attorneys for plaintiff except in two cases, or advised him, except as to matters relating to collection of assets. That in conferring and advising with plaintiff, defendants were acting as attorneys for the bankrupt and not as attorneys for said trustee. They admit plaintiff took various trips to Los Angeles and San Francisco in connection with the administration of said estate; allege that if plaintiff charged his traveling expenses in a lump sum upon his account it was his own independent act and not by reason of any advice given by the defendants.

They admit plaintiff drew from the funds of said estate the sum of $500 per month for approximately 10 months; admit such withdrawal was improper and unlawful. They

admit plaintiff collected $250 per month from Occidental Properties, Inc.; that such acts were unlawful and improper. They also admit plaintiff purchased certain articles of personal property from the bankrupt estate and that such acts were unlawful and improper. Defendants admit and allege that they assisted in the drafting of the petition filed for removal of plaintiff as trustee on behalf of certain creditors of the bankrupt estate, including the petition filed by Clarence W. Morris in the United States District Court for the Southern Division of California; that hearing was had thereon in which it was determined by said court that plaintiff was an improper person to act as trustee of said bankrupt estate; that in its determination said court found that plaintiff, as trustee, had been guilty of misconduct and mismanagement in the course of the administration of said estate; that the court found plaintiff had been guilty of various acts of mismanagement and misconduct, other than those alleged in plaintiff's complaint, all of which acts were the independent and voluntary acts of plaintiff, and none of which were done or performed by plaintiff by reason of any advice, suggestion or statement of defendants.

Defendants admit that C. M. Monroe appeared on behalf of certain creditors of the bankrupt estate at the hearing had on the final account filed by plaintiff after his removal.

All other allegations of the complaint are denied. Further answering defendants expressly allege that plaintiff was removed as trustee by reason of his own fault, misconduct and mismanagement in the course of the administration of the bankrupt estate. That the court found his removal was for the best interest of said estate and that plaintiff was not a proper person to act as trustee thereof. Defendants further plead the one and two year statute of limitations as provided in section 339, subdivision 1, and section 340, subdivision 3, of the Code of Civil Procedure.

The answer to the second cause of action is the same except it denies the wilfulness and knowledge of the wrong on the part of the defendants.

The main complaint made on appeal is that the trial court erred in granting a nonsuit at the close of plaintiff's testimony.

We are somewhat at a loss to determine plaintiff's theory of this action, whether he intends it to be one for

malicious prosecution, fraud, conspiracy or negligence. Certain parts of the complaint sound in each. A fair construction seems to us to be that plaintiff is seeking damages, if any, from the fact that he was removed as trustee of the bankrupt estate by reason of the advice of defendants negligently given, such removal causing him to suffer from nervous shock and injuring his reputation for honesty and integrity. That said removal disgraced him, causing him severe financial loss and impairing his credit.

Treating it then as a case of negligence, it is necessary for plaintiff to allege and prove four things: First, that there existed the relationship of attorney and client; second, that in connection with such relationship advice was given; third, that he relied upon such advice and as a result thereof did things that he would not otherwise have done; fourth, that as a direct and proximate result of such advice and the doing of such acts, he suffered loss and was damaged thereby. ▇ In looking for the proof under this alignment some form of employment, either expressed or implied, must be shown. There can be no recovery unless such employment is shown or there is evidence of some duty which has been negligently performed. In *Jacobson* v. *Northwestern Pac. R. R. Co.*, 175 Cal. 468 [166 Pac. 3, 5], it is said: "To warrant the maintenance of an action by one for an injury due to negligence, there must exist some obligation toward the plaintiff which defendant has left undischarged (*Schmidt* v. *Bauer*, 80 Cal. 565 [5 L. R. A. 580, 22 Pac. 256])." See, also, *Towne* v. *United Elec. Gas & Power Co.*, 146 Cal. 766 [2 Ann. Cas. 905, 70 L. R. A. 214, 81 Pac. 124]. Plaintiff testified that within a few days after he was appointed trustee he had a consultation with defendants McKee and Monroe in their office in the presence of Mr. Gray, of the firm of Gray, Cary, Ames & Driscoll, with relation to the employment of an attorney to act for the trustee. Regarding this consultation plaintiff testified: "I wanted to know who would become my attorney; and Mr. Monroe and Mr. McKee both told me that I had better have Cary, Driscoll—or Gray, Cary, Ames & Driscoll represent me in certain matters and they would represent me on other matters . . . Q. And Gray, Cary, Ames & Driscoll were appointed officially as your attorneys? A. Yes, sir, but Gray, Cary, Ames & Driscoll were taking care of the litigated

matters and they (referring to the defendants) were doing the other work . . . This was a previous conference to what I testified to before. And either one or both of them suggested that I would have Gray, Cary, Driscoll and Ames as my counsel. I said I did not know either of those gentlemen, and Mr. Monroe said, 'We can get them here this afternoon and you will meet them', and I said, 'Well, what about you fellows,' and they said they were—that they had filed the bankruptcy papers but they had never gone into the case only for the purpose of putting them in bank-. ruptcy and that that would be all over immediately and that there was nothing to prevent me from having them as my attorneys, and later on they would make a petition for it.'' Later defendants did file a petition for appointment as special counsel for the trustee for certain specific purposes set out in the petition. The appointment was made but plaintiff makes no complaint as to defendants' services rendered under this special appointment. ▮ From the testimony it is conclusively shown that defendants were not attorneys for plaintiff except for the special purposes named in the application, of which plaintiff makes no complaint. It is true plaintiff talked over his transactions in the bankrupt estate with different members of the defendants' firm, and from his own statement of these conversations, we fail to find any evidence that they advised him to do any of the acts complained of, or in any way apprised him what to do. When plaintiff desired the advance payment of $500 per month he was told by Monroe or McKee, ''Lannon (the referee) can fix it. We can fix that with Ted all right.'' Plaintiff's testimony relative to the allegation that Wright told him how to keep account of his petty expenditures, presents a similar incident. No advice was ever given and plaintiff's statement as to what was said consists of remarks concerning what he told Wright in a casual conversation. Under such statement, defendants cannot be charged with giving plaintiff advice, any more than had plaintiff told them what he had already done. Likewise a close examination of the testimony fails to disclose any advice as to plaintiff's right to purchase the personal property from the estate. Plaintiff testified that defendants drew many petitions and orders made by the referee. This was admitted by defendants. Strictly, these were matters for the appointed attor-

neys for the trustee to do, but the atorneys for the bankrupt were equally interested, so long as they had to do with the assets of the estate. There was no charge made for services, and it cannot be said that defendants were acting as attorneys for plaintiff. The failure of the evidence to support plaintiff's contention as to employment, is a complete answer as to whether or not plaintiff has complied with the second duty cast upon him to show that defendants gave him advice. A complete reading of the transcript of the evidence will disclose that defendants were placed in a position where they had the opportunity to and could have advised plaintiff. They did not, however, advise him concerning the business pertaining to the trust estate, and no employment was ever had, save in the special matters hereinbefore mentioned. Plaintiff was aware that whoever his attorneys might be it would be necessary to secure an order of the referee to make the appointment. Gray, Cary, Ames and Driscoll had been appointed as such attorneys, while defendants had not. In the present action plaintiff is not suing defendants as his personal attorneys but as attorneys for him as trustee. He also knew they represented certain creditors of the estate as well as the bankrupt, and so were not eligible to be his attorneys. Appellant claims he acted on the advice given him by defendants and that his reliance upon such advice was the cause of his removal. The record discloses that at one time while plaintiff was in conversation with defendant Wright relative to his accounts, Wright said "You have got your hands full managing that estate without watching the nickels and dimes; it is a big estate and if you use the money for the estate charge it accordingly." Even if this could be considered advice, there certainly could be no error in it. Wright simply told the plaintiff that he had his hands full handling it and that "if you use the money for it, charge it." He was not told not to charge it nor to use it for any other purpose than for the estate. In one conversation plaintiff claimed Wright told him to charge his expenses in a lump sum. Conceding this point, yet plaintiff did not act thereon as in his final account he filed an itemized statement containing each item of expenditure. Other matters relied upon, such as taking his wife with him to San Francisco, the purchase of some of the personal property of the estate, obtaining the salary of $500 per month, and the

salary of $250 per month from the Occidental Properties, Inc., are in the same category. No definite advice was given by defendants and plaintiff acted on such matters on his own instance. There was no evidence tending to show plaintiff relied on the advice he claimed was given, or what damages he claimed he suffered as the proximate result of the alleged negligence, except the removal of his trust.

It is incumbent upon plaintiff to show some loss by reason of negligence. Plaintiff's contention is that advice was given on certain specific subjects; that he relied and acted upon such advice and that as a result of so acting he was removed from his position as trustee. Under the laws of negligence, it became necessary for plaintiff to prove, not merely that his action upon the advice of the defendants contributed to his removal, but it must be established that the reliance upon erroneous advice was the sole and proximate cause of such removal and the loss sustained. (*Frost* v. *Hanscome,* 198 Cal. 550 [246 Pac. 53].) It is likewise established that before a client can recover for alleged negligence of his attorneys he must establish that any loss suffered was caused solely by the negligence of the attorney. (*Cochrane* v. *Little et al.,* 71 Md. 323 [18 Atl. 698, 702]; *Flynn* v. *Judge* 149 App. Div. 278 [133 N. Y. Supp. 794]; *Maryland Casualty Co.* v. *Price et al.,* 231 Fed. 397 [Ann. Cas. 1917B, 50].)

What damages has plaintiff sustained? None is shown concerning the matters alleged, except the allegation that by reason of all these things he was removed from office. The ultimate fact, then, was his removal and its attending results. The damage is the result of the act complained of, the result being his removal as trustee and its effect on plaintiff's financial and business reputation. So far as the damages which relate to plaintiff's financial loss, both past and prospective, are concerned, they are too uncertain and speculative, not only as to amount, but as to character, to entitle plaintiff to recover. It is not so much an uncertainty as to the amount of benefit to be derived from the performance, but an uncertainty or contingency whether such gain or benefit would be derived at all. Even if the professional advice of defendants had been beyond criticism, and plaintiff had continued in his trust capacity, there was no certainty that he would not be deprived of the

emoluments of his office or of some portion thereof, for reasons entirely foreign to the advice given by counsel. Trustees' fees are not definitely designed by law, but rest in the sound discretion of the court. Again it might not be possible to lay the revocation and removal entirely at the door of defendants.

The chief concern of the court in the removal of a trustee is the safety of the trust. This was so expressed in the opinion of removal in the bankruptcy case. In its order the court stated, after setting out some of the circumstances and irregularities shown at the hearing, some of which were other acts than those mentioned in the complaint: "The fact that a trustee does not regard such a transaction as improper is a strong indication that he has not the required mental make-up and attitude to qualify him to act as trustee of a bankrupt estate and that the best interests of the estate and of its creditors will not be conserved by his retention . . . These acts are inimical and detrimental to the proper administration of the bankrupt estate and cannot be countenanced by the court." (*In re Stephens & Co.*, (D. C.) 30 Fed. (2d) 725.)

The courts of this state have held strictly to the rule that the mere probability that a certain event would have happened, upon which a claim for damages is predicated, will not support the claim or furnish the foundation of an action for such damages. (*McQuilkin* v. *Postal Tel. Cable Co.*, 27 Cal. App. 698 [151 Pac. 21]; *Kenyon* v. *Western Union Tel. Co.*, 100 Cal. 454 [35 Pac. 75]; 8 Cal. Jur. 757.) The case of *Westwater* v. *Grace Church*, 140 Cal. 339 [73 Pac. 1055], was a suit for damages plaintiff sustained to her health and reputation, for being discharged as contralto vocalist in defendant choir and while the suit was on a contract, yet the court, in discussing a proximate cause, which is a condition in both *ex delicto* and *ex contractu* actions, says: "'Proximately caused thereby',—that is, such damages as must immediately follow and are produced by the act complained of, are the damages for which the statute provides the measure, or such damages as in the ordinary course of things would be likely to result from the act."

Damages to health, reputation or feeling are not clearly ascertainable, either in their nature or origin. Who

could say how much in dollars and cents the injured feeling should be compensated; how much money shall be received for the injured reputation? The court will not allow damages for remote causes and effects, nor will they allow the examination of the physicial condition of plaintiff and the cause which brought it about, to determine how much his health has been impaired by his dismissal as trustee, independent of his constitution, habits or chronic condition, or to ascertain the damage to his health caused by defendants, and estimate it in dollars and cents. Certainly such damages are too remote for recovery. Under the record in this case the damages are too uncertain and speculative and recovery cannot be had. (8 Cal. Jur. 757–759, inc.)

■ The evidence is to the effect that the matters complained of were not the sole proximate cause of the damages and are too remote and speculative to permit the plaintiff herein to recover. This ruling is made with the principle in mind that on a motion for nonsuit at the close of plaintiff's case, the evidence is interpreted most favorably to the plaintiff, without passing upon the sufficiency thereof. (*Marchetti* v. *Southern Pac. Co.*, 204 Cal. 679, at 684 [269 Pac. 529]; *Bush* v. *Weed Lumber Co.*, 55 Cal. App. 588 [204 Pac. 24]; *Oles* v. *Kahn Bros.*, 81 Cal. App. 76 [253 Pac. 158].)

The next error complained of is that the trial court erred in denying plaintiff a trial by jury. This being a suit for damages plaintiff was entitled to a trial by jury unless waived. Section 631 of the Code of Civil Procedure, subdivision 4, provides that a jury may be waived "by failing to announce that a jury is required, at the time the cause is first set upon the trial calendar if it be set upon notice or stipulation, or within five days after notice of setting if it be set without notice or stipulation".

Rule 5 of the Rules of the Judicial Council relating to superior courts provides that, "In all counties having more than two (2) and less than nine (9) judges [of which San Diego is one] on the first Monday, or on the next succeeding Tuesday, of each calendar month, there shall be set for trial . . . during the period extending from the third Monday of the current month to the first Monday or the next succeeding Tuesday . . . of the next succeeding month, as many civil cases as can reasonably be disposed of by the court during said period . . . The cases thus set shall be taken

from the 'Civil Active list,' . . . Said last mentioned list shall be known as the 'Civil Trial List'."

Rule 1 of the above-mentioned Rules of the Judicial Council provides for the service and filing of a memorandum for setting a civil case for trial. Prior to the filing of such memorandum a copy thereof shall be served upon the attorneys for all parties, and unless admission of service is indorsed on the memorandum and filed, the same shall be accompanied by an affidavit showing such service, and it is provided in cases where such cause is set on stipulation it must be accompanied by a corresponding memorandum. In case a jury is not demanded by the party filing such memorandum, any other party to the cause desiring a jury trial shall have five days after service of such memorandum within which to file and serve his written demand for a trial by jury subject to the provisions of section 1013 of the Code of Civil Procedure, relating to service by mail.

In the case before us the memorandum for setting was in the form contemplated by said rule 1, with proof of service on attorneys for plaintiff on October 1, 1929, and filed by defendants with the clerk on October 2, 1929. Thereafter on February 17, 1930, the cause was set for trial for March 14, 1930, and notice of such setting was received by plaintiff's attorneys on February 18th. Thereafter, on February 19th, demand for jury was mailed to the clerk and on March 3d the jury fees were deposited with the clerk.

Subdivision 4 of said section 631 of the Code of Civil Procedure provides two ways in which it shall be deemed a jury is waived: first, by failing to announce that the jury is required at the time the cause is first set for trial if set upon notice, and second, by failing to announce within five days after notice of setting that a jury is required, if set without notice or stipulation.

When a cause is at issue it is ready to be placed on the "Civil Active List" by the service of the memorandum as provided for. This is notice to the opposite party that the same will be set on the next setting day, or as soon thereafter as the same can be reached by the court. If a jury is demanded, such party must be present at the setting thereof, or must have filed the necessary demand. In case the attorney does not desire to be present or does not know just when the cause will be set for trial, he must within five days

after the service of such memorandum, serve and file his demand for a trial by jury. When a case is set for trial without notice or stipulation the party demanding the jury shall have five days after notice of setting to so demand a jury. Failure to be present at the time the case is set for trial or within five days after the service of the memorandum to place the case on the active list, to serve and file a demand for a jury constitutes a waiver of the right to a trial by jury.

In the instant case no demand for a jury was made, served nor filed within the five days after the service of the memorandum to place said cause on the active list and therefore it must be deemed the party waived a trial by jury.

Because of the conclusions we have already reached in this case, it will be unnecessary for us to consider the issues raised by the defendants, whereby they plead various statutes of limitations barring plaintiff's right of recovery.

For the reason herein expressed the judgment of the trial court is affirmed.

Jennings, Acting P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 21, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 25, 1931.