[Civ. No. 51800. Second Dist., Div. Two. May 23, 1978.]

EDWARD ZALTA et al., Plaintiffs and Appellants, v.
DALE BILLIPS et al., Defendants and Respondents.

**COUNSEL**

Aaron L. Lincoff and Rand Marlis for Plaintiffs and Appellants.

Haight, Dickson, Brown, Bonesteel & Rigg and Roy G. Weatherup for Defendants and Respondents.

**OPINION**

**FLEMING, Acting P. J.**—Appellants Zalta and Medical Group appeal the dismissal of respondents Billips and others from a pending action for defamation, legal malpractice, and related wrongs.

Appellants' complaint against respondents arose out of the settlement of an earlier medical malpractice action brought against appellants in which respondent attorneys acted as defense counsel for appellants. In the medical malpractice action, entitled Morales v. Zalta, of which we take judicial notice, Zalta and Medical Group were two of thirteen defendants sued. Respondents were attorneys retained by appellants' insurance carrier, Pacific Indemnity Insurance Co., to represent appellants and others as counsel. Still other defendants were represented by other counsel. After several settlement conferences among counsel and court, counsel for all parties agreed in open court on 3 December 1974 to

settle the medical malpractice action. Under the terms of the settlement appellants Zalta and Medical Group were not required to contribute to a settlement fund to be established for the benefit of plaintiff Morales. Respondent attorneys, however, did not orally proclaim or announce that fact in open court, and the minute order of the proceedings merely indicated that a settlement conference had taken place and settlement had been effected. Two days later on December 5 newspaper articles appeared in the Los Angeles Times and the San Gabriel Valley Tribune reporting that the Morales case had been settled and that among the "principal defendants who will share in paying the settlement" were three named pharmaceutical firms and four named physicians, one of whom was identified as Dr. Edward Zalta.[1] The record of the December 3 settlement conference, transcribed in January 1975, included a comment by the presiding judge which could be interpreted to mean that appellants would be among those contributing to the settlement.[2]

In August 1975 Zalta and Medical Group filed an 11-count complaint against respondents and others alleging damages for defamation, invasion of privacy, negligence, breach of contract, etc., as a result of the newspaper publicity reporting the settlement. The first six counts of the complaint attributed the source of the newspaper stories to statements made to reporters by Milton Ritter, plaintiff's counsel in the medical malpractice action, and sought damages of $985,000 from him and his law firm. The remaining five counts directed against respondents did not specifically/identify the source of the newspaper reports, but asserted that respondents' silence at the settlement proceedings in court and their failure to announce in open court the noncontribution of appellants to the settlement led to subsequent adverse publicity for appellants, to their

---

[1]The Los Angeles Times reported:

"Taking part in the conferences were the principal defendants who will share in paying the settlement—three pharmaceutical firms, Hoffman-La Roche, Inc., Ayerst Laboratories, and the Schering Corp; four physicians, Drs. Edward Zalta, Robert E. Robison, George W. Selby and David G. Haney and Glendora Community Hospital."

The San Gabriel Valley Tribune reported:

"Defendants in the pending suit who took part in the settlement conference were Glendora Community Hospital and four of its doctors: Edward Zalta, Robert E. Robison, George W. Selby and David G. Haney.

"Three pharmaceutical firms were also involved, Hoffman-La Roche, Inc.; Ayerst Laboratories and the Schering Corp."

[2]"[A] cash sum of $5,500.00 is being contributed by all of the other defendants which makes up a package of $200,000.00 cash." Later in the settlement conference Genest, the claims agent for Pacific Indemnity, the insurance carrier for Zalta, Medical Group, and others, elaborated on the "nature and extent of the settlement" and identified four doctors other than Zalta and Medical Group who would be contributing to the settlement.

injury and damage in the sum of $400,000. Respondent counsel's failure to speak out on appellants' behalf, said the complaint, "had the effect of placing Zalta in a position wherein the public records referable to the Morales case appear to disclose that Zalta was a monetary contributor to the settlement of the Morales case, that he was a party liable or responsible for the damages allegedly sustained by the plaintiff in the Morales case, and that he was thus guilty of medical malpractice . . ."; that respondents failed to keep Zalta informed of the settlement proceedings or give him notice of the conference; that if they had done so Zalta "would not have been adversely affected by the appearances in the public records pertaining to the Morales case that he was a party at fault therein"; that "the proceedings had in the Morales case were subsequently read by newspaper reporters investigating the disposition of said Morales case, and that said reporters subsequently reported information appearing in said public records to their respective newspaper employers; further, that said employers published and circulated in newspapers reports of plaintiff's being a party found liable and guilty of medical malpractice . . ."

Specifically, we are concerned with the sustention of demurrers to the seventh to eleventh causes of action in appellants' amended complaint. The seventh and tenth causes of action are tort claims pleaded by Zalta and Medical Group against their counsel in the Morales case, alleging counsel's duty to speak up at the conference, negligent breach of that duty, resultant adverse publicity, and damages to reputation of $400,000. In the eighth and eleventh causes of action appellants pleaded third party beneficiary contract claims, alleging that Zalta and Medical Group were third party beneficiaries of the contract between the malpractice insurer (Pacific) and respondent attorneys, that counsel's failure to speak up and clarify the record at the settlement conference breached that contract. The ninth cause of action on behalf of Medical Group, pleaded injury to a master-servant relationship, in that the adverse publicity which damaged Zalta's reputation reduced the value of his services to his employer, Medical Group.

This cause involves not only the relationship of attorney and client, but more particularly the relationship of counsel and client in a pending cause. ■ Although respondents were hired as attorneys by appellants' insurance carrier, respondents acted as counsel for appellants in a pending cause and owed fiduciary duties to both. (See discussion, *American Mut. Liab. Ins. Co.* v. *Superior Court* (1974) 38 Cal.App.3d 579, 592-593 [113 Cal.Rptr. 561].) Their duty to appellants, as in any

attorney/client relationship, arose from " 'a fiduciary relation of the very highest character.' " (*Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 189 [98 Cal.Rptr. 837, 491 P.2d 421].) The specific issues at bench are, (1) whether respondent attorneys had a duty as counsel at the settlement conference to proclaim and publicize appellants' noncontribution to the settlement, and (2) if they had such a duty, whether its breach proximately caused the damages appellants claim to have suffered.

## I.

■ None of the reported California legal malpractice cases establishes a legal duty on counsel to conduct proceedings in court to present his client in a favorable public light. Attorneys have been held liable for misperformance and nonperformance of legal acts, such as mistakes in drafting wills and other documents, and in handling clients' funds; and counsel have been held liable for procedural missteps that foreclosed opportunities to take advantage of legal remedies, such as failure to serve process, negligent conduct of a trial, failure to attend the trial, or failure to call crucial witnesses. (See comprehensive Note (1963) 63 Colum.L. Rev. 1292; 7 Cal.Jur.3d, Attorneys at Law, (1973) § 278, at pp. 615-616; *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand, supra* (1971) 6 Cal.3d 176; *Budd* v. *Nixen* (1971) 6 Cal.3d 195 [98 Cal.Rptr. 849, 491 P.2d 433]; *Lucas* v. *Hamm* (1961) 56 Cal.2d 583 [15 Cal.Rptr. 821, 364 P.2d 685]; *Lysick* v. *Walcom* (1968) 258 Cal.App.2d 136 [65 Cal.Rptr. 406, 28 A.L.R.3d 368]; *Ishmael* v. *Millington* (1966) 241 Cal.App.2d 520 [50 Cal.Rptr. 592]; *Modica* v. *Crist* (1954) 129 Cal.App.2d 144 [276 P.2d 614]; *McGregor* v. *Wright* (1931) 117 Cal.App. 186 [3 P.2d 624].) No case holds counsel liable for damages resulting from the reaction of persons outside the court system, such as news reporters, to events taking place within the system, such as proceedings at a settlement conference.

■ As set out in *Budd* v. *Nixen, supra* (1971) 6 Cal.3d 195, 200, the elements of legal malpractice, like those of any other action for negligence, are: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence. [Citations.] [¶] If the allegedly negligent conduct does not cause damage, it generates no cause of action in tort. [Citation.] The mere breach of a professional duty, causing only nominal damages, speculative harm, or

the threat of future harm—not yet realized—does not suffice to create a cause of action for negligence. [Citations.] Hence, until the client suffers appreciable harm as a consequence of his attorney's negligence, the client cannot establish a cause of action for malpractice."

The element of duty in a negligence action has been cogently discussed in *Commercial Standard Ins. Co.* v. *Bank of America* (1976) 57 Cal.App.3d 241, 248 [129 Cal.Rptr. 91]:

"Analysis of liability for negligence in terms of duty has been criticized as a question-begging process. The assertion that liability must be denied because defendant bears no duty to plaintiff begs the essential question—whether the plaintiff's interests are entitled to legal protection against the defendant's conduct. It [duty] is a shorthand statement of a conclusion, rather than an aid to analysis in itself. But it should be recognized that duty is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection. [Citations omitted.] [¶] The principal policy considerations are: the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved. [Citations and quotation marks omitted.]"

 It seems clear that while counsel has a duty to represent his client to the best of his ability, he does not become an insurer of either his client's self-esteem or his public reputation, liable for every misunderstanding of his client's position and responsible for every ambiguity in court proceedings susceptible to interpretation by outsiders. (See generally, *Goodman* v. *Kennedy* (1976) 18 Cal.3d 335 [134 Cal.Rptr. 375, 556 P.2d 737]; *Lucas* v. *Hamm* (1961) 56 Cal.2d 583 [15 Cal.Rptr. 821, 364 P.2d 685]; *Banerian* v. *O'Malley* (1974) 42 Cal.App.3d 604, 613 [116 Cal.Rptr. 919]; *Ventura County Humane Society* v. *Holloway* (1974) 40 Cal.App.3d 897 [115 Cal.Rptr. 464]; *Sprague* v. *Morgan* (1960) 185 Cal.App.2d 519, 523 [8 Cal.Rptr. 347]; *Floro* v. *Lawton* (1960) 187 Cal.App.2d 657 [10 Cal.Rptr. 98].)

At bench the issue is whether counsel, in effecting a settlement which relieves a defendant from liability to contribute to the settlement, has a legal duty to make a record that will appear to exonerate defendant from fault in the public eye and make it likely that consequent outside publicity will be favorable. We do not think counsel comes under any such duty. In representing a defendant who has been sued for money damages counsel's professional and legal responsibility to his client is to negotiate and effect a settlement which releases his client from legal liability. Counsel is not liable to his client if third persons not parties to the court proceedings misconstrue the significance of settlement, obtain inaccurate information from others in the cause, or attribute liability to a party where none has been assumed. The duty to shape the content of outside reportage of events taking place in the courtroom is more properly that of press agent or public relations representative than of counsel or attorney at law.

Obviously, the fact of settlement says nothing about a defendant's liability, his nonliability, his freedom from fault, or his culpability for medical malpractice. Under terms of the settlement reached with Morales the parties merely agreed that Zalta and Medical Group need not pay any money to plaintiff, a result based neither on appellants' legal liability for plaintiff's injuries nor on any legal vindication of appellants' medical conduct. Public ignorance of the lack of legal significance in settlement may have been the immediate cause of Zalta's discontent with the publicity accompanying the settlement, but, undoubtedly, the underlying cause of his discontent was his original inclusion as a defendant in the Morales lawsuit, an inclusion whose undesirable consequences can in no way be attributed to counsel who successfully defended him.

## II

Our conclusion that counsel fell under no legal duty to publicize the terms of an agreed-upon settlement is fortified by the paucity of the allegations of proximate cause pleaded herein. Causation in fact must be present to support causation in law. At bench we have two independent events: a court proceeding which formalized the settlement of the Morales case; and newspaper articles which stated or implied that appellants were among those who would contribute to the settlement. No demonstrable nexus between these two events is set forth. Reporters may or may not have relied on the settlement proceedings, may or may not have been present in the courtroom, may or may not have talked to other counsel in the case, may or may not have interviewed litigants, witnesses,

and court attaches. The possibility of independent, intervening cause is great. (*McGregor* v. *Wright* (1931) *supra,* 117 Cal.App. 186, 196.) Indeed, it is more than a possibility, for in other counts of appellants' complaint they have pleaded misstatements to news reporters by Ritter, plaintiff's counsel in the malpractice action, as the causal link between the fact of settlement and the injuries and damages that resulted as the consequence of newspaper publicity. The averments of these other counts strongly suggest that appellants' principal quarrel is not with respondents, their own counsel who successfully defended them, but with Ritter, opposing counsel in the medical malpractice action, who filed the complaint that named them as defendants, who listed Zalta's name first in the caption, and who held a press conference to publicize the fact of settlement. In view of the complaint's allegations about Ritter, the consequences of respondents' failure at the courtroom settlement conference to speak out and publicize appellants' noncontribution to the settlement become wholly speculative. (*McGregor* v. *Wright* (1931) *supra,* 117 Cal.App. 186, 197-198.) Respondents' silence in court is not connected up with any injury or damage that resulted to appellants from the newspaper accounts of the settlement. (See, e.g., *Ventura County Humane Society* v. *Holloway* (1974) *supra,* 40 Cal.App.3d 897, 907, for a discussion of remoteness of damage in a legal malpractice context.) ■ As pointed out in *Lysick* v. *Walcom* (1968) *supra,* 258 Cal.App.2d 136, 150, 153, although issues of duty and proximate cause are normally questions of fact for the jury, when circumstances do not allow any reasonable doubt about their presence or absence, these issues must be resolved as questions of law by the court. In sustaining the demurrers the trial court correctly resolved these issues as a matter of law.

The judgment is affirmed.

Compton, J., and Beach, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 19, 1978.