James P. ASHER et al., Plaintiffs-Appellants,

v.

Fred Harvey HARRINGTON et al., Defendants-Appellees.

Nos. 71–1075, 71–1116.

United States Court of Appeals, Seventh Circuit.

April 13, 1972.

---

Richard O. Wright, Michael J. Zimmer, John P. Savage, Milwaukee, Wis., Davis, Kuelthau, Vergeront & Stover, Andrus, Sceales, Starke & Sawall, Foley & Lardner, Milwaukee, Wis., of counsel, for plaintiffs-appellants.

Ralph W. Bushnell, Madison, Wis., Stafford, Rosenbaum, Rieser & Hansen, Madison, Wis., of counsel, for defendants-appellees.

Before SWYGERT, Chief Judge, DUFFY, Senior Circuit Judge, and CAMPBELL, Senior District Judge.*

SWYGERT, Chief Judge.

This is a consolidated appeal of two actions by the district court: the dismissal of plaintiffs' complaint for failure to state a federal cause of action, and the denial of leave to file an amended complaint on the grounds that appeal of the initial dismissal divested the district court of jurisdiction. We affirm both holdings.

Plaintiffs are students at the University of Wisconsin; the defendants include the president and the regents of the university and the chancellors of the Madison and Milwaukee campuses. The complaint was precipitated by the defendants' actions, which plaintiffs have characterized as their "failure to reasonably maintain the university in operation for the benefit of the majority of students," during the period of campus demonstrations following reports of American military activities in Cambodia in April 1970. Federal jurisdiction is claimed under 42 U.S.C. § 1983 on the basis of a deprivation of the plaintiffs' civil rights, and was rejected by the district court which dismissed the complaint. Asher v. Harrington, 318 F. Supp. 82 (E.D.Wis.1970). Plaintiffs filed a motion for leave to amend the complaint under Rule 60(b), Fed.R.Civ. P. Before the district court ruled on this motion, plaintiffs appealed the dismissal of the original complaint to this court. Subsequently, the district court held that the appeal of the original complaint divested it of jurisdiction to consider the motion to amend, and plaintiffs challenge that holding.

I

Review of the district court's first action requires a careful evaluation of the plaintiffs' original complaint. In the first count of the complaint plaintiffs aver a denial of rights and privileges under the first and fourteenth amendments. In paragraph 9 they claim that they were entitled to

certain individual rights and privileges including but not limited to the following: to pursue an education at the University; the unencumbered use and enjoyment of the facilities and grounds of the University while pursuing their education at said University; to attend classes in study courses conducted under the tutelage and supervision of qualified faculty and administrator personnel, said classes leading to the award of graduation credits prerequisite to a degree from the University.

In paragraph 11 they charge the defendants with depriving them of the rights described in paragraph 9 by causing the "wholesale misuse" of university facilities and by allowing acts of "physical coercion" and "intimidation" to occur. It is this deprivation—the suspension of the normal educational acitivities they have described—which plaintiffs maintain is equivalent to a violation of their rights of free speech and assembly, equal protection, and due process.

The second count claims a denial of equal protection. It describes regula-

---

* Senior District Judge William J. Campbell, United States District Judge for the Northern District of Illinois, is sitting by designation.

tions adopted by the university which defendants are charged with disregarding. It alleges that these violations also resulted in denying plaintiffs their rights to the normal educational activities outlined in paragraph 9 of the first count, and that this denial amounts to a deprivation of equal protection under the fourteenth amendment.

The third count alleges that the university breached its agreement with the students to provide the educational opportunities specifically described in various university publications. This claim sounds in contract and must qualify for federal jurisdiction on its own merits or be cognizable in federal court under the doctrine of pendent jurisdiction.

The district court held that the first two counts did not qualify as civil rights claims. This determination was not a judgment as to the technical insufficiency of the pleadings. The court was not holding that the complaint failed to allege specific facts to buttress its conclusions where notice to the opposing parties is the principal policy at stake. At the very minimum, the facts pleaded do support the conclusion that normal educational activities were suspended as alleged in both counts. The critical question before the district court and on this appeal is whether the claimed deprivations are of federal constitutional significance. As in Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1945), the issue is one of jurisdiction rather than specificity:

> Before deciding that there is no jurisdiction, the district court must look to the way the complaint is drawn to see if it is drawn so as to claim a right to recover under the Constitution and laws of the United States. . . . [A]llegations far less specific than the ones in the complaint before us have been held adequate to show that the matter in controversy arose under the Constitution of the United States. 327 U.S. at 681–682, 66 S.Ct. at 776.

We do not judge the merits of the complaint at this juncture; we must consider only whether the rights claimed to be abridged are rights protected under the first or fourteenth amendments of the Constitution in order to qualify for federal jurisdiction.

Plaintiffs maintain that the continuance of normal educational activities is an aspect of academic freedom protected by the first amendment. Though we agree that first amendment rights are intertwined in the educational process, we find plaintiffs' claim sweeps too broadly. Where courts have been concerned with applying first amendment protection of thought and inquiry to the unique demands of a university, the results have been more limited. They have considered such rights as the right of a university to organize its educational facilities without state intervention, the rights of professors to independently determine research needs and curriculum, and to freely engage in the political activities of citizens, and more recently, the rights of students to free expression within and without the classroom.

Plaintiffs' claim would greatly extend judicial protection since it asks that courts not only guarantee these traditional rights to free expression and inquiry, but also review the particular institutional setting in which they are exercised. Judicial concern is here directed not to whether professors and students were free to speak or to inquire during the months of April and May 1970, but the form in which that inquiry took place. The duty we are asked to acknowledge is not the university officials' duty to protect the speech rights of students since there are no allegations that university decisions during this period, either formally or in their implementation, silenced any political faction or hindered the expression of any views. Rather, the complaint is premised upon the duty of university officials to protect those rights of students which are allegedly embodied in the university's normal educational activities. That these rights relate to curricular form is apparent. They include not only the right "to pursue an

education at the university" but also the right "to attend classes in study courses conducted under the tutelage and supervision of qualified faculty and administrator personnel, said classes leading to the award of graduation credits prerequisite to a degree from the university." Indeed, under the terms of the complaint, a university that switched to a tutorial system of education on the English model might be vulnerable to charges of first amendment violations.

Neither the cases cited by the plaintiffs nor the requirements of academic freedom support this extension of the first amendment's protections. In Keyishian v. Bd. of Regents of the Univ. of N. Y., 385 U.S. 589, 87 S.Ct. 675, 17 L. Ed.2d 629 (1967), for example, the Court found New York's teacher loyalty laws unconstitutional on the grounds that the first amendment "does not tolerate laws that cast a pall of orthodoxy over the classroom." 385 U.S. at 603, 87 S.Ct. at 683. But in holding that the classroom was entitled to protection as the "marketplace of ideas," the Court was not suggesting that the classroom was the only setting that would so qualify. Indeed, to call upon courts to delineate the specific form in which academic inquiry must occur would itself place an impermissible burden on academic freedom. Respect for the autonomy of educational institutions has resulted in focusing judicial protection of first amendment rights primarily on extracurricular speech and assembly. Courts have generally hesitated to review purely academic matters, as in cases involving administrative decisions about curriculum, where the danger of impinging upon the authority of the institution to determine educational programs was greatest. Developments in the Law-Academic Freedom, 81 Harv.L.Rev. 1045, 1151–52 (1968).

These considerations are especially compelling in the instant case. We are at a loss to ascertain the standards by which federal courts are to judge the right to continue normal educational activities. We find no guidance in the first amendment itself or in the cases construing it. Clearly, the plaintiffs are not suggesting that we have the power —quite apart from the competence—to evaluate which aspects of a university's functions we consider to be "normal." Rather, plaintiffs are suggesting that we take statements of university officials in catalogues and other publications at face value as defining what constitutes education for that institution. As such, they are asking that we elevate to constitutional status what is in essence only a contract claim. We are convinced that nothing in the first amendment requires this construction.

■ In addition, we can find no cause of action under the fourteenth amendment for a denial of equal protection of the laws. The university's decisions, such as the decision to terminate classes, applied to all students equally. Nor is there any claim of differential administration of university rules. In fact, since the equal protection claim is made only with respect to the right to continue normal educational activities, we fail to see how plaintiffs can allege any differential impact; no student could attend class or use university facilities in the usual manner. The fact that plaintiffs are students who wanted to attend classes and who were disappointed by the university's actions is not sufficient to sustain a claim of a denial of equal protection. The fourteenth amendment was not designed to guarantee unanimity.

Lastly, we find no basis for a claim of denial of due process of law. There are no allegations in the complaint that the university failed to follow its own decision-making procedures during this period, nor that those procedures are inherently unfair to the plaintiffs in this case.

■ Thus, we conclude, that the plaintiffs have not described rights for which there are remedies under 42 U.S. C. § 1983. The university's actions may raise critical questions about the neutrality of educational institutions and

the unique institutional requirements of academic freedom, but such discussions are not properly before this court. To the extent that legal rights are endangered, those rights are here adequately protected by state proceedings enforcing contract provisions. *See, e. g.*, Paynter v. New York University, 66 Misc.2d 92, 319 N.Y.S.2d 893 (1971), rev'g 64 Misc. 2d 226, 314 N.Y.S.2d 676 (1970). With the dismissal of the first two counts for want of federal jurisdiction, the doctrine of pendent jurisdiction will not sustain consideration of the third count which is strictly a contract claim. Since there is no independent ground for federal jurisdiction in the third count, we also affirm the district court's dismissal of that count.

## II

■■ The second issue before us is the propriety of the district court's holding that appeal of the original complaint divested it of jurisdiction to consider the amended complaint. That decision was a correct one. The filing of an appeal vests jurisdiction in the court of appeals; further proceedings in the district court cannot then take place without leave of the court of appeals. Elgen Mfg. Corp. v. Ventfabrics, Inc., 314 F.2d 440, 444 (7th Cir. 1963); Grand Opera Co. v. Twentieth Century Fox Film Corp., 235 F.2d 303, 308 (7th Cir. 1956); In re Federal Facilities Realty Trust, 227 F.2d 651, 653 (7th Cir. 1955). We turn to the question of whether leave to amend should now be granted.

■ The question is properly before this court since the initial action of the district court had the combined effect of dismissing the original complaint and of denying plaintiffs leave to amend. This is so for two reasons: the practical result of plaintiffs' actions in appealing the complaint was to cut off the opportunity to amend at the district court level, and technically, under Rule 41(b), Fed.R.Civ.P., a dismissal of the complaint operates as a dismissal with prejudice, unless the court specifies otherwise. Our review can include not only whether the original complaint was properly dismissed, which we have already considered, but whether leave to amend should have been granted.

■ Rule 15(a), Fed.R.Civ.P., states that leave to amend should be "freely granted when justice so requires." The decisions of this circuit support a liberal policy of granting amendments to the complaint. See Fuhrer v. Fuhrer, 292 F.2d 140 (7th Cir. 1961); 222 E. Chestnut St. Corp. v. Lakefront Realty Corp., 256 F.2d 513 (7th Cir.), cert. denied, 358 U.S. 907, 79 S.Ct. 232, 3 L.Ed.2d 228 (1958). Ordinarily, conformance with this policy would lead us to remand the issue to the district court to consider the motion to amend. However, where, after reviewing the proposed amendments in detail, it is apparent that the requirements of Rule 15(a) are unfulfilled, we can choose to dismiss the amended complaint at this stage in the proceeding without remand. *See* Moviecolor Ltd. v. Eastman Kodak Co., 288 F.2d 80, 88 (2d Cir. 1961).

■■ The test is whether or not the allegations of other facts consistent with the challenged pleading could cure the deficiency in the complaint. Bonanno v. Thomas, 309 F.2d 320, 322 (9th Cir. 1962). Plaintiffs claim that the amended complaint improves upon the original in two ways: It states that the students intended to exercise their constitutional rights by participating in the normal functions of the university which include:

(a) Freely assembling in classrooms and other University facilities;

(b) Freely speaking, debating and discussing in said classrooms and other University facilities any and all matters relating to their scholarly pursuits as well as other matters; and

(c) Freely inquiring and learning from qualified University instructor personnel, from fellow students, from

experimentation, from reading and from other sources.

It adds a more detailed description of the manner in which university officials deprived the plaintiffs of their right to continue normal educational activities. Nevertheless, so long as the constitutional deprivations claimed continue to be premised upon an alleged right to normal educational activities, we fail to see how these amendments escape the deficiencies of the original. The amended complaint, like the original, fails to plead a federal cause of action, and is accordingly dismissed.

The judgment of the district court is affirmed.

CAMPBELL, Senior District Judge (dissenting).

Respectfully, I dissent.

I would join in the opinion of my distinguished brethren were it not for my disagreement with the underlying assumption pervading their entire decision. The majority accepts without question that the action of the defendants in completely suspending the operation of the University was reasonable. Thus, in characterizing the plaintiffs' claim of constitutional deprivation the majority states: "It is this deprivation —the suspension of the normal educational activities they have described— which plaintiffs maintain is equivalent to a violation of their rights of free speech and assembly, equal protection and due process."

The plaintiffs' complaint, however, clearly charges that the defendants deprived them of their constitutional rights of speech and assembly by *arbitrarily* denying them the opportunity to pursue their normal educational activities. It is further alleged that the plaintiffs had been granted the right to use the facilities of the University, that, (as the majority concedes) their rights of speech and assembly were intertwined with the use of these facilities, and finally that these constitutional rights were deprived them by the defendants'

causing or acquiescing in the wholesale misuse of these facilities, arbitrarily cancelling classroom sessions and by coercing those plaintiffs who sought merely to exercise these ordinary rights.

When the complaint is viewed in what I consider to be its proper light, I can only conclude that it states a proper federal claim under Section 1983 of the Civil Rights Act, 42 U.S.C. § 1983. There can be no dispute that the constitutional assurances of speech and assembly are intertwined with and involved in the educational process. See Keyishian v. Board of Regents, 385 U.S. 589, 87 S. Ct. 675, 17 L.Ed.2d 629; Tinker v. Des Moines School District, 393 U.S. 503, 506, 89 S.Ct. 733, 21 L.Ed.2d 731. It therefore follows that the arbitrary denial of the opportunity to exercise such constitutional guarantees suffices to state a claim for relief under Section 1983. If a dissident student has a constitutionally protected right to wear, in nondisruptive circumstances, a black armband into a classroom as a peaceful expression of his anti-war views, then students who wish merely to pursue their customary educational opportunities also possess a constitutional right to enter the classroom and express their ideas of normal educational pursuit, free from arbitrary interference by school officials. See Tinker v. Des Moines School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731.

In my judgment to acknowledge this constitutional protection would not, as the majority suggests, have the effect of elevating a particular educational forum or a specific curricular form to constitutional significance. I feel that once a forum for expression and assembly has been provided by a University in the first instance, then it may not be capriciously and arbitrarily eliminated. This, of course, leaves the initial selection of the particular forum to the discretion of University officials where it rightfully belongs.

It seems to me unfair, to say the least, that the Federal Courts which seem to welcome—almost solicit—every

possible type of student rights case, from hair styles to the destruction of school property, for approval as proper forms of student protest should here close their doors to a group of students who seek merely their civil and contractual rights to pursue peacefully their studies without the violent interference of a well organized disruptive mob allegedly, supported by the University. See, Breen v. Kahl, 419 F.2d 1034, 1036 (7th Cir. 1969); Massie v. Henry, 455 F.2d 779 (4th Cir. 1972); Richards v. Thurston, 424 F.2d 1281 (1st Cir. 1970); Bishop v. Colaw, 450 F.2d 1069 (8th Cir. 1971). I would reverse the judgment of the District Court and would also permit the plaintiffs to file their amended complaint. The question of the reasonableness of the defendants' actions could thus be placed in issue by way of a properly pleaded defense.