[Civ. No. 31873. First Dist., Div. Two. July 23, 1974.]

VENTURA COUNTY HUMANE SOCIETY FOR THE PREVENTION OF CRUELTY TO CHILDREN AND ANIMALS, INC., Plaintiff and Appellant, v. WILLIAM L. HOLLOWAY et al., Defendants and Respondents.

## COUNSEL

Thomas McGinn Smith, James P. Sullivan, Jr., and Ropers, Majeski, Kohn, Bentley & Wagner and John M. Rubens for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Anthony C. Joseph, Assistant Attorney General, Lawrence R. Tapper and Joanne Condas, Deputy Attorneys General, as Amici Curiae on behalf of Plaintiff and Appellant.

Morrison, Foerster, Holloway, Clinton & Clark, Girvan Peck, Sedgwick, Detert, Moran & Arnold and Scott Conley for Defendants and Respondents.

## OPINION

**KANE, J.**—Plaintiffs appeal from a judgment of dismissal entered upon an order sustaining respondents' demurrer to the second amended complaint

without leave to amend. The relevant facts as appear in the second amended complaint and the record at hand may be summarized as follows:

In October 1967, George Whittel ("Whittel") retained respondents-law firm to prepare his last will and testament. A will bearing the date of October 5, 1967, was thereafter drawn by respondents. Whittel died on April 17, 1969, and his will was admitted to probate on May 15, 1969. The decedent's estate, appraised at approximately $40,000,000, was largely bequeathed to various charities. The legal dispute in the probate court centered around Paragraph Eighth of the will which reads as follows:

"EIGHTH: All of the residue of my estate I give, devise and bequeath to the three organizations named below. I direct that the three named organizations (or their respective affiliates) each receive at least 25% of the total; and with this limitation I give to my executors the authority to choose the exact allocation of the remaining 25% among said organizations.

"It is my desire the funds be used to relieve pain and suffering among animal, bird and fish life and to preserve, improve and perpetuate animal, bird and fish life and my executors should disburse funds in such manner as, in their judgment, to best achieve these aims.

"I further instruct my executors to require the organizations receiving these funds to devote some or all of the funds paid over to them to the erection and maintenance of buildings or other permanent structures to be used pursuant to the desires enumerated above, said structures to bear my name.

"The organizations so receiving funds must be organizations which qualify under the provisions of Section 170(c) of the Internal Revenue Code of 1954. If such section is amended, revised or superseded, the organizations must continue to qualify under the section as amended or revised or such section or sections as might supersede it.

"The organizations are:

"(1) DEFENDERS OF WILDLIFE, Washington, D.C.

"(2) SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS (Local or National).

"(3) THE NATIONAL AUDUBON SOCIETY, INC., Washington, D.C., or any affiliated chapter, branch, etc.

"If any said organization shall not so qualify under the Internal Revenue Code, its share shall proportionately increase the shares of the qualifying organizations."

In the probate court the fundamental issue revolved around the definition of "SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS (Local or National)" which, under the will, was to receive 25 percent of the residuary estate. While numerous humane societies filed nonexclusive claims to the portion of the estate disposed of by Paragraph Eighth, the San Francisco Society for the Prevention of Cruelty to Animals (hereinafter SFSPCA) took the position that it alone was entitled to one-fourth of the estate. The exclusive claim raised by SFSPCA necessitated extensive hearings and evidence. After 13 days of trial, the probate court rejected the exclusive claim of SFSPCA, holding that the testator intended a gift to the local and national humane societies as a group, and, by its decree interpreting the will, directed the executors to select one or more charitable organizations which actively perform the functions of societies for the prevention of cruelty to animals.

From the decision of the probate court SFSPCA filed a notice of appeal. The matter, however, was settled by a court order which approved the agreement entered into between SFSPCA and the executors of the estate by the terms of which the appeal was dismissed in consideration of payment of $700,000 to SFSPCA.

In this class action it is alleged that the drafting of the will in ambiguous terms constituted both breach of contract and negligence, as a result of which appellants were damaged in the following particulars:

(a) They had to hire legal counsel and participate in lengthy legal proceedings at great expense to them in order to oppose the exclusive claims of SFSPCA and others and to obtain a decree interpreting the will of the decedent and determining their interest in the estate;

(b) They have not received any part whatsoever of the funds to which they are entitled and the resultant delay has caused and will continue to cause further damages and deprivation of benefits;

(c) The exclusive claim of SFSPCA resulted in a settlement of $700,000 and increased the costs of administration of the estate causing direct and indirect losses to appellants.

Respondents demurred to both the original complaint and the first amended complaint which demurrers were sustained with leave to amend. Finally, in an order dated March 29, 1972, the trial court sustained respondents' demurrer to the second amended complaint without leave to amend. Relying on its earlier ruling that there must be a proximity between the attorney and his acts and the beneficiary and his loss, the trial court pointed out that an attorney who is given the name of a beneficiary by

a client is under no duty to investigate the named beneficiary to determine whether it exists or whether the classification is nebulous or confusing. As a consequence, the trial court held that appellants' second amended complaint did not state facts sufficient to constitute a cause of action.

Initially, it must be pointed out that, although the second amended complaint purports to state a cause of action for both breach of contract and negligence, the gist of both causes of action is respondents' alleged malpractice in drafting the will in ambiguous terms. ■ The elements of a cause of action for professional negligence are, of course, well defined. These ingredients are: (1) the *duty* of the professional to use such skill, prudence and diligence as other members of his profession commonly possess and exercise; (2) *breach of* that *duty*; (3) a *proximate causal connection* between the negligent conduct and the resulting injury; and (4) actual loss or *damage* resulting from the professional negligence (*Budd* v. *Nixen* (1971) 6 Cal.3d 195, 200 [98 Cal.Rptr. 849, 491 P.2d 433]; *Chavez* v. *Carter* (1967) 256 Cal.App.2d 577, 579 [64 Cal.Rptr. 350]; *Ishmael* v. *Millington* (1966) 241 Cal.App.2d 520, 523 [50 Cal.Rptr. 592]; *Modica* v. *Crist* (1954) 129 Cal.App.2d 144, 146 [276 P.2d 614]). When these elements coexist, they constitute actionable negligence. On the other hand, absence of, or failure to prove, any of them is fatal to recovery. This applies especially to the all important element of duty. As the cases underline, in ruling on general demurrers the dispositive issue ordinarily is that of duty, i.e., the existence of duty of care owed by the alleged wrongdoer to the person injured or to a class of which he is a member. If the plaintiff does not and cannot show a duty owed directly to him, the action is subject to dismissal (*Amaya* v. *Home Ice, Fuel & Supply Co.* (1963) 59 Cal. 2d 295, 307 [29 Cal.Rptr. 33, 379 P.2d 513]; 35 Cal.Jur.2d, § 9, p. 494).

Apparently recognizing that but for establishing a duty of care on the part of respondents there is no right to recovery, appellants, buttressed by amicus curiae, advance the novel argument that respondent attorneys owed a duty to appellant class as potential beneficiaries under the will, which duty embraced an obligation to make an investigation to determine the true intention of the testator and to draft an unambiguous will. Appellants likewise contend that by ambiguously designating the intended beneficiaries in Clause Eighth, subdivision (2), as "SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS (Local or National)," a nonexistent organization, respondents breached their duty of care, and the delay, litigation expense and the settlement compromise resulting from the ambiguity constitute recoverable damages. As will be seen below, appellants' argument is not supported by case law, cannot be accepted as a matter of legal policy, and, under the facts of the case at bench, must be rejected as a matter of law.

■ It is an elementary proposition that an attorney, by accepting employment to give legal advice or to render legal services, impliedly agrees to use ordinary judgment, care, skill and diligence in the performance of the tasks he undertakes (*Moser* v. *Western Harness Racing Assn.* (1948) 89 Cal.App.2d 1, 7 [200 P.2d 7]). ■ In elaborating on this duty, the cases have repeatedly held that an attorney who assumes preparation of a will incurs a duty not only to the testator client, but also to his intended beneficiaries, and lack of privity does not preclude the testamentary beneficiary from maintaining an action against the attorney based on either the contractual theory of third party beneficiary or the tort theory of negligence (*Heyer* v. *Flaig* (1969) 70 Cal.2d 223 [74 Cal.Rptr. 225, 449 P.2d 161]; *Lucas* v. *Hamm* (1961) 56 Cal.2d 583 [15 Cal.Rptr. 821, 364 P.2d 685]; *Biakanja* v. *Irving* (1958) 49 Cal.2d 647 [320 P.2d 16, 65 A.L.R.2d 1358]). However, the foregoing general rule notwithstanding, the attorney's liability towards the intended beneficiaries under the will is not automatic. ■ The cases underline that the determination whether in a specific case the attorney should be held responsible to a third person not in privity constitutes a policy matter and involves balancing factors, among which are the extent to which the transaction was intended to affect the plaintiff, the *foreseeability of harm* to him, the *degree of certainty that the plaintiff suffered injury*, the *closeness of the connection* between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm (*Biakanja* v. *Irving, supra,* at p. 650; *Lucas* v. *Hamm, supra,* at p. 588).

The cases cited by appellants unhesitatingly support the view that *an attorney may be held liable to the testamentary beneficiaries only* if the above stated test is fully met, that is, *if due to the attorney's professional negligence the testamentary intent expressed in the will is frustrated and the beneficiaries clearly designated by the testator lose their legacy as a direct result of such negligence.* Thus, in *Biakanja* v. *Irving, supra,* the sole beneficiary under the will lost her bequest because defendant, a notary public, failed to have the will properly attested. The court held that defendant had a duty to protect the beneficiary specified in the will where the " 'end and aim' " of the will was to provide for such beneficiary and where plaintiff would have received her bequest but for the defendant's negligence. In *Lucas* v. *Hamm, supra,* a group of beneficiaries designated under a will alleged that they failed to receive their intended bequest as a consequence of the drafting attorney's failure to avoid the operation of the rule against perpetuities and restraints on alienation. The court first restated the requisites of a cause of action as laid down in *Biakanja* v. *Irving, supra,* then went on to say: "As in *Biakanja,* one of the main purposes which the transaction between defendant and the testator intended

to accomplish was to provide for the transfer of property to plaintiffs; *the damage to plaintiffs* in the event of invalidity of the bequest *was clearly foreseeable; it became certain,* upon the death of the testator without change of the will, *that plaintiffs would have received the intended benefits but for the asserted negligence of defendant . . . ,"* and concluded that *"intended beneficiaries* of a will *who lose their testamentary rights because of failure of the attorney* who drew the will to properly fulfill his obligations under his contract with the testator *may recover . . ."* (*Lucas* v. *Hamm, supra,* at pp. 589, 591; italics added).[1]

Finally, in *Heyer* v. *Flaig, supra,* where the attorney negligently failed to advise the testatrix of the legal consequences of her intended marriage, and as a result her daughters failed to receive their legacies, the court similarly reaffirmed the foregoing premise, stating, "We impose this duty because of the relationship between the attorney and the intended beneficiary; public policy requires that the attorney exercise his position of trust and superior knowledge responsibly so as not to affect adversely persons *whose rights and interests are certain and foreseeable."* (P. 229; italics added.)

The foregoing analysis makes it evident that the contention that respondents owed a duty of care towards appellant class as potential beneficiaries, even in the absence of an allegation of a clear causal connection between the claimed malpractice and the alleged loss and notwithstanding the fact that appellants did receive their testamentary share, is not supported by the existing case authorities. Appellants' position therefore can only be construed as a request to extend the scope of the attorney's liability so that any defects in wills which result in litigation would also constitute actionable legal malpractice. Neither appellants nor amicus curiae, however, advance any cogent reasons why the scope of an attorney's duty should be so extended under the principles enunciated in *Biakanja* and the cases following it and/or on the basis of general legal policy.

In resolving this issue we must call to mind the basic principle that, while out of an agreement to provide legal services to the testator, a duty also arises to act with due care with regard to the interests of the intended beneficiary, *the scope of duty owed to the beneficiary is determined by reference to the attorney-client relationship* (*Heyer* v. *Flaig, supra,* at p. 229). The primary duty is owed to the testator-client and the attorney's

---

[1]It is of interest to note that while the court in *Lucas* held that the third party beneficiary theory is available to testamentary beneficiaries in actions against the testator's attorney, it also concluded that the error, if any, with respect to the rule against perpetuities and restraints on alienation was not actionable under either a negligence or contract theory (*Lucas* v. *Hamm, supra,* at pp. 592-593).

paramount obligation is to serve and carry out the intention of the testator. Consequently, when, as in the case at bench, the testamentary intent has been implemented, no good reason exists why the attorney should be held accountable for using certain words suggested or selected by the testator which later prove to be ambiguous. In addition, the task of proving whether claimed ambiguity was the result of negligence of the drafting attorney or whether it was the deliberate choice of the testator, would impose an insurmountable burden on the parties, since in such a case the trier of fact would be required to decide this crucial issue without the benefit of the testimony of the most important witness, the testator himself. Once recognized, such a duty would apply by parity of reasoning not only to wills, but also to contracts, conveyances and other legal instruments. The duty thus created would amount to a requirement to draft litigation-proof legal documents. This unlimited liability, as the learned trial judge aptly observed, would result in a speculative and almost intolerable burden on the legal profession indeed.

We are not unmindful that some textbooks cited in the amicus curiae brief do set up certain guidelines for attorneys, suggesting that "Care should be exercised to determine the *correct name* of the charity" (Harris, Family Estate Planning Guide (2d ed. 1971) § 335, p. 648), that "The correct corporate title of any charity to which the testator wishes to make a gift should be ascertained" (Schwarzberg, Practicing Law Institute Monographs (1963) p. 30), that "there are several inquiries which must be made before you actually proceed with your charitable bequest . . ." (Callahan, How to Make a Will Simplified (1965) p. 61). However, it is apparent that these suggestions are merely in the nature of recommendations and are not established criteria for determining the scope of the duty of ordinary care imposed upon the will-drafting attorney. Moreover, these textbooks, too, acknowledge that "Good draftsmanship requires that the designation of the charity and the charitable purpose be *as specific and unambiguous as the testator's desires will permit*" (Cal. Will Drafting (Cont. Ed. Bar 1965) § 6.19; italics added).

██  But aside from the foregoing considerations, in the situation here presented appellants must be precluded from recovery as a matter of law.

First, in interpreting the will, the probate court found that although there were ambiguities in the designation of the beneficiaries, the trust purpose was clear and could be fully implemented.[2] Accordingly, unlike the

---

[2]The pertinent portion of the memorandum decision reads as follows:
"The charitable trust will provide a proper and adequate vehicle for distribution and will terminate when the funds have been distributed pursuant to the terms of the will.

cases cited, in the present case the testamentary intent was fully carried out and the beneficiaries under the clause complained of did get their full share.

Secondly, and more significantly, while the second amended complaint contains allegations that "defendants did negligently and carelessly fail to inquire as to the testator's true intention and did negligently and carelessly draft said Clause EIGHTH and Clause NINTH of said Will in language which was ineffectual to clearly and precisely set forth the intention of the testator," it is utterly devoid of any indication as to what the true intention of the testator (if different from that expressed in the will) was; and, oddly enough, appellants likewise fail to address themselves to this vital issue on appeal.

The importance of this omission can hardly be overstated. It is obvious that in the absence of an allegation that the testator did intend to leave a part of his residuary estate to appellants specifically, it cannot be determined with any degree of certainty that appellants suffered harm or injury at all. It is entirely possible that, had the suggested inquiry by respondents been made and the "true intention" of the testator detected, appellants would have been altogether precluded from acquiring any portion of the estate, and the testator's bounty would have been limited exclusively to the SFSPCA and/or to an entirely different group of beneficiaries. Under these circumstances, there is ample ground to presume that the institution of the lawsuit, by which appellants' claim to 25 percent of the residuary estate was successfully established, worked a benefit rather than a detriment to appellants. The deduction is thus inescapable, that appellants have failed to show the crucial elements upon which respondents' duty may be predicated, namely the foreseeability of harm resulting from the ambiguity, the degree of certainty that injury was suffered, and the closeness of connection between respondents' conduct and the loss claimed (cf. *Biakanja* v. *Irving; Lucas* v. *Hamm;* both *supra*).

But the lack of these allegations negates not only the duty of care, the

---

The trust, both its purpose and objective, and the rights of the qualified beneficiaries thereof, will receive adequate protection from a court of equity; and the enforcement of the requirements of the testator and an accounting of the corpus may be compelled by the Attorney General. . . .

"The guidelines for the executors and trustees have been detailed herein; *there is nothing indefinite as to the trust—the beneficiaries can be ascertained,* determined and qualified pursuant to the will and within the groups which limit selection; *the distributive purpose of the trust is clear;* provision for termination is made; and, protective devices for the effective management and operation of the trust are present and available." (Italics added.)

most vital element of the cause of action, but also the requisite showing that actual loss or damage resulted from the conduct charged.

While it has been frequently said that a person who commits a wrongful act or wrongfully omits to perform a particular act required of him is liable for all the detriment directly flowing from the wrongful act or omission, it is black-letter law that damages may not be based upon sheer speculation or surmise, and the mere possibility or even probability that damage will result from wrongful conduct does not render it actionable (*McGregor* v. *Wright* (1931) 117 Cal.App. 186, 196-198 [3 P.2d 624]; 14 Cal.Jur. 2d, §§ 43, 68, 75, pp. 670-671, 692-693, 699-700). As often emphasized, it is the uncertainty as to the fact of damage rather than its amount which negatives the existence of a cause of action based on either breach of contract and/or negligence (*Walker* v. *Pacific Indemnity Co.* (1960) 183 Cal. App.2d 513, 517 [6 Cal.Rptr. 924]).

The judgment is affirmed.

Taylor, P. J., and Rouse, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 17, 1974. Sullivan, J., did not participate therein. Tobriner, J., was of the opinion that the petition should be granted.