**OUTBOARD MARINE CORP.,**
Plaintiff-Appellant,

v.

**LIBERTY MUTUAL INSURANCE COMPANY et al., Defendants-Appellees.**

No. 75–1607.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 12, 1976.

Decided June 7, 1976.

James E. Betke, Chicago, Ill., for plaintiff-appellant.

Cornelius J. Harrington, Jr. and James E. Dahl, Max E. Wildman, Donald M. Haskell, Chicago, Ill., for defendants-appellees.

Before CASTLE, Senior Circuit Judge, PELL and TONE, Circuit Judges.

TONE, Circuit Judge.

This case is an outgrowth of a California personal injury action in which a large judgment was recovered against Outboard Marine Corporation (OMC), plaintiff here. The defendants here, two insurance companies and a California lawyer, are charged with having failed to defend OMC properly in that action.

In July 1971 one Vladimir Sabich was injured when an OMC "Trackster," an all-terrain motor vehicle in which he was riding, overturned. He filed a suit against OMC in a California state court, alleging that the vehicle was defectively designed and that OMC had known this but failed to warn users. He claimed $500,000 in actual damages and an equal amount in punitive damages. OMC gave notice of this suit to both its primary insurer, defendant Liberty Mutual Insurance Company, and its excess insurer, defendant Home Insurance Company. Liberty Mutual retained defendant John Stumbos, a California lawyer, to defend the case. Home denied coverage for

punitive damages, and took no part in the defense. The case proceeded to trial, and in January 1974 the jury awarded Sabich $600,000 in actual damages and $1,250,000 in punitive damages. Following the entry of judgment in these amounts, Liberty Mutual paid Sabich $500,000, the amount of its policy limit, and Home advised OMC that on demand it would pay OMC $100,000, representing the unpaid compensatory damages. Both insurance companies having refused to prosecute an appeal, OMC itself appealed to the California Appellate Court, where the case is now pending.

The case before us is an attempt by OMC to recover from Stumbos and Liberty Mutual for the alleged mishandling of the defense of the *Sabich* case and from Home for failing to participate in that defense. OMC also seeks general relief against Liberty Mutual with respect to the defense of other, unnamed pending cases. OMC seeks to recover its expenses in appealing the Sabich verdict, indemnity for any liability it may have if the appeal is unsuccessful, indemnity for any liability that may be imposed in a related case brought by one Roy Howarth, and injunctive and declaratory relief relating to the conduct of Liberty Mutual in other pending cases. The District Court dismissed OMC's complaint, with prejudice as to some counts and without prejudice as to others, and denied OMC leave to file an amended complaint (which did not differ in substance from the original complaint except that a count seeking declaratory relief was added). OMC appeals from the dismissal of its original complaint and the denial of leave to amend. (The District Court dismissed without prejudice OMC's claim that the Home policy covered punitive damages. On appeal, OMC does not challenge this aspect of the order.)

OMC's allegations are in substance as follows: In the *Sabich* case Stumbos mishandled both discovery and trial, creating the false impression that OMC had attempted to conceal the truth and failing to prepare or present important expert testimony and experimental evidence that would have favored OMC. His conduct and that of Liber-

ty Mutual combined to deprive OMC of several opportunities to settle the case. Before trial, Sabich offered to settle for $500,000, Liberty Mutual's policy limits, but later withdrew the offer because of Stumbos' violation of California discovery rules. The day after trial began, Sabich increased his claim to $750,000 in compensatory damages and $7,500,000 in punitive damages. OMC urged Liberty Mutual and Home to begin immediate settlement negotiations. In response, Liberty Mutual made a token settlement offer. Midway through the trial, Sabich offered to settle for $750,000. Liberty Mutual refused, however, to offer more than $150,000, despite the urgings of its claims manager and of Stumbos, who had evaluated OMC's probable liability at over $1,250,000.

After the trial, OMC alleges, Sabich's lawyer contacted OMC and threatened to file a class action against it on behalf of all Trackster owners, but offered, if OMC would pay the judgment rather than appealing, to refrain from filing the class action and vacate the Sabich judgment to prevent its future use for collateral estoppel purposes. When OMC filed its appeal, the attorney proceeded to file a class action in which Roy Howarth, the owner of the Trackster in which Sabich was riding when he was injured, purports to represent the class. The Howarth complaint alleges that the Trackster is so defectively designed as to be worthless, that OMC intentionally concealed those defects, and that Howarth only discovered the defects when the Sabich verdict was returned. The demand is for actual damages of $12,000,000, which is the aggregate of the purchase prices paid by the class, together with punitive damages of $26,000,000. The Howarth case has not yet reached trial.

For purposes of this appeal, we consider the amended complaint as if it had been filed. See *Asher v. Harrington*, 461 F.2d 890, 895 (7th Cir. 1972); *Fox v. City of West Palm Beach*, 383 F.2d 189, 195 (5th Cir. 1967). It seems to be agreed that substantive questions of law are controlled by California law.

## I. *Prematureness*

On the basis of the alleged negligence and bad faith of Stumbos and Liberty Mutual in connection with the *Sabich* case, OMC seeks to recover its expenses in pursuing the Sabich appeal ($27,000, according to the amended complaint), indemnity for any amount it may have to pay Sabich, and punitive damages. The District Court dismissed these claims without prejudice, on the ground that they were premature because the Sabich judgment was not yet final.

■■■■ The law of California on this point appears to be that a claim for malpractice arises when the client sustains a substantial monetary injury, as he does when he pays attorneys' fees or posts an appeal bond as a result of the malpractice. *Budd v. Nixen*, 6 Cal.3d 195, 98 Cal.Rptr. 849, 853, 491 P.2d 433, 436–437 (1971).[1] The same rule would presumably apply to a claim against an insurer for conduct analogous to malpractice. OMC's claims against Stumbos and Liberty Mutual therefore arose when OMC made substantial expenditures in pursuing its appeal.

■■ Apart from OMC's right to sue on claims that have accrued, refusal to permit it to do so would be manifestly unjust. Under the *Budd* case, the statute of limitations began to run on OMC's claims when they accrued. While Stumbos' counsel has offered to waive the statute of limitations, Liberty Mutual has refused to do so. Even if the court had discretion to refuse to entertain the claims until all damages were ascertainable, that discretion should not be exercised when the result is likely to be barring of the claim by the statute of limitations.[2]

■■ Stumbos and Liberty Mutual maintain that reversal of the Sabich judgment would establish that the judgment was the result of error on the part of the California trial judge rather than their negligence. OMC may be able to show, however, that proper handling of the case would have prevented the trial errors (*e. g.*, because the case would have been settled) or would have produced a favorable verdict despite the trial errors. Alternatively, it might be able to show breach of a duty to appeal. Cf. *Cornwell v. Safeco Insurance Co.*, 42 A.D.2d 127, 346 N.Y.S.2d 59, 71–72 (1973).

Because OMC's claim has accrued under California law,[3] an action upon it may be maintained even though all the damages are not yet ascertainable. If the Sabich judgment is not yet final when the case is reached for trial, the District Court will have a wide discretion in deciding how best to proceed and may consider, *inter alia*, postponing the trial or entering a conditional judgment (compare *Burton v. State Farm Mutual Automobile Insurance Co.*, 335 F.2d 317, 324, 325 (5th Cir. 1964)).

## II. *The Howarth Suit*

In addition to holding that the claims against Liberty Mutual and Stumbos arising from the *Sabich* case were premature, the District Court also held that OMC would not be entitled to part of the relief sought, namely, indemnity for any judgment that may be rendered against it in the *Howarth* case.

---

1. Stumbos' reliance upon *Ventura County Homes Society v. Holloway*, 40 Cal.App.3d 897, 115 Cal.Rptr. 464, 470 (1974), is misplaced. The basis of that decision was not that the action was premature despite the plaintiff's incurring legal expense, but that the plaintiffs had merely alleged that the defendant attorney had negligently failed to determine a testator's true intention, without alleging that his intention would have been more favorable to them than the actual terms of the will. Thus, what was lacking was proof that any injury was cased by the negligence, rather than proof of the extent of the injury.

2. OMC paid for its appeal bond on April 9, 1974, so that California's two year statute of limitations ran out before this case was decided; and since the cause of action apparently did not arise in Illinois, the action would presumably be barred by the Illinois borrowing statute, Ill.Rev.Stat. ch. 83 § 21 (1975).

3. We note that this would be equally clear if the Illinois statute of limitations were applied. See *Kohler v. Woollen, Brown & Hawkins*, 15 Ill.App.3d 455, 304 N.E.2d 677 (1973).

## A.

■ We turn first to OMC's argument that even if its product was defective, the *Howarth* case would not have been filed if the *Sabich* case had been handled properly. From this it is sought to be inferred that the improper handling of the *Sabich* case, rather than the defect in the product, would be the proximate cause of any adverse judgment in the *Howarth* case. We do not agree. OMC has not alleged, and could not reasonably allege, that the defective nature of its product would have remained concealed from other purchasers and users if the Howarth suit had not been filed. In any event, OMC has no legally protected interest in freedom from discovery of, or accountability for, its wrongdoing.

## B.

■ OMC also argues that it may lose the *Howarth* case although its product is not actually defective, either because it will be collaterally estopped by the Sabich judgment from relitigating the defect issue in the *Howarth* case or because of the unfavorable trial record in the *Sabich* case. The likelihood of a holding of collateral estoppel may not be great. While the California Supreme Court, in *Bernhard v. Bank of America,* 19 Cal.2d 807, 122 P.2d 892 (1942), pioneered the repudiation of the mutuality doctrine, the California courts appear to have been influenced in some degree by Professor Currie's (Currie, *Mutuality of Collateral Estoppel: Limits of the Bernhard Doctrine,* 9 Stan.L.Rev. 281 (1957)) counsel against a doctrinaire application of the *Bernhard* principles. See, *e. g., Nevarov v. Caldwell,* 161 Cal.App.2d 762, 327 P.2d 111 (1958), *hearing denied,* 327 P.2d 122 (1958); see also *Zdanok v. Glidden Co.,* 327 F.2d 944, 956 (2d Cir. 1964), *cert. denied,* 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964). When the party against whom the prior judgment is asserted did not have a "full and fair opportunity to litigate the issue in the first action or . . . other circumstances justify affording him an opportunity to relitigate the issue," relitigation will ordinarily be permitted even by those courts which have rejected the mutuality rule. *Restatement Second of Judgments* § 88 and comments and Reporter's Note (Tent. Draft No. 3 1976); see also *id.* § 68.1, comment j; and *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 328, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). If OMC's allegations are true, the California court is likely to permit relitigation of the issue of whether the vehicles were defective. Nevertheless, we cannot completely exclude the possibility that the California court might expand the doctrine of collateral estoppel as OMC fears, and if this happens any resulting liability in the *Howarth* case would be further damage flowing from the conduct discussed in Part I of this opinion. Although the Howarth matter is pleaded as a separate count, it amounts to no more than an allegation of an additional form of damages and therefore cannot be said to be asserted prematurely. To the extent then that OMC alleges possible damage from the collateral estoppel effect of the Sabich judgment, the holding of the District Court as to the Howarth counts must be reversed with directions to allow the plaintiff to plead this additional item of damages.

## C.

■ We reach a different conclusion regarding the allegations that OMC will be harmed at trial by the adverse trial record in the *Sabich* case. In the *Howarth* case, the finder of fact will have before it all the evidence concerning OMC's liability, together with as much of the trial record in *Sabich* as Howarth succeeds in introducing, countered by OMC's efforts to explain away that record as a product of negligence by Liberty Mutual and Stumbos. If the factfinder nevertheless concludes that OMC is liable, we must assume that this verdict will be correct. What OMC seeks is to reintroduce all the same evidence before a federal jury in the hope that that jury will disagree with the California finder-of-fact. The federal jury will be asked to find that the California court was misled by the Sabich record, and was, unlike the federal jury,

unable to appreciate that this record was due to the mishandling of the case. We are unwilling to presume that juries in the Northern District of Illinois are endowed with greater wisdom than juries (or trial judges) in California. There is no reason for us to question the adequacy of the California truth-finding process or to allow a jury to do so.

### III. *Liability of Home*

■ OMC seeks to recover from Home for its refusal to participate in settlement discussions or the defense, on the ground that this conduct breached the duty of good faith imposed on insurance companies by California law. The District Court dismissed the claims against Home with prejudice, on the grounds that Home was not obligated under the terms of the contract to defend the Sabich suit, and that there was no fiduciary relationship between OMC and Home.

The relevant provisions of the Home insurance contract require Home to pay sums "which the Insured, or any company as his insurer, or both, become obligated to pay either through adjudication or compromise"; provide that Home "shall not be called upon to assume charge of the settlement or defense" but has the right "to associate with the Insured or the Insured's underlying insurers, or both, in the defense and control of any claim, suit or proceeding . . . in which event the Insured and the Company shall cooperate in the defense"; and also provide that Home's liability under the policy "shall not attach" until the insured or the underlying insurer have paid the amount of the underlying policy limits.

The only obligation imposed on Home was to indemnify the insured after payment had been made. The insurance contract explicitly states that Home does not have the duties plaintiff seeks to impose upon it in this action. The reservation of the option to "associate" in the defense imposes no duties when that option is not exercised. Even the right to assume control of the defense carries with it no duty to partici-

pate in the defense. See *Gribaldo, Jacobs, Jones & Associates v. Agrippina Versicherunges A.G.*, 3 Cal.3d 434, 91 Cal.Rptr. 6, 476 P.2d 406, 414 (1970).

■ Under California law, moreover, loss of an insurer's moral support and expert advice, which is all that OMC was arguably denied, is not compensable even if the insurer has a duty to defend. When an insurer refuses to defend and the insured hires his own counsel, the insured is deprived of the insurer's expert advice and moral support, yet the California Supreme Court has held that it must be presumed that the judgment against the insured would have been the same if the insurer had handled the defense, and liability for failure to defend is ordinarily limited to the amount of the policy plus attorneys' fees and costs. *Comunale v. Trader's & General Insurance Co.*, 50 Cal.2d 654, 328 P.2d 198, 201 (1958) (said to be dictum but to state the general rule in *State Farm Mutual Automobile Insurance v. Allstate Insurance Co.*, 9 Cal.App.3d 508, 88 Cal.Rptr. 246, 259 (1970). See also *Chicken Delight of California, Inc. v. State Farm Mutual Automobile Ins. Co.*, 35 Cal.App.3d 841, 111 Cal.Rptr. 79, 84 (1973)).

The District Court was correct in dismissing the claim against Home.

### IV. *Equitable and Declaratory Relief*

OMC also seeks injunctive and declaratory relief against Liberty Mutual, alleging that in cases now pending against OMC, Liberty Mutual has provided inadequate representation, has prevented direct communication between OMC and counsel retained by Liberty Mutual, and in other respects has deliberately breached its duty as an insurer. What OMC asks, in effect, is for the court to supervise the defense of numerous actions pending throughout the United States which Liberty Mutual is under a duty to defend on behalf of OMC.

■ One prerequisite for injunctive relief is, of course, irreparable injury, and that injury must be more than speculative. *Adamzewski v. Local Lodge 1487*, 496 F.2d

777, 786 (7th Cir. 1974), *cert. denied,* 419 U.S. 997, 95 S.Ct. 311, 42 L.Ed.2d 271. OMC's only allegation of irreparable injury is that Liberty Mutual's conduct may result in adverse judgments, which may damage OMC's reputation and encourage other suits for which Liberty Mutual may disclaim responsibility. This allegation is too speculative to support a claim for injunctive relief.

■ To begin with, it is doubtful that Liberty Mutual's conduct will result in adverse judgments. OMC's interests are protected by the fiduciary duty owed it by the attorneys hired by Liberty Mutual. That duty is the same as it would be if OMC had directly engaged them. *American Mutual Liability Insurance Co. v. Superior Court,* 38 Cal.App.3d 579, 113 Cal.Rptr. 561, 570 (1974); *Lysick v. Walson,* 258 Cal.App.2d 136, 65 Cal.Rptr. 406, 413 (1968). Here, as in other contexts, see *United States v. Mandell,* 525 F.2d 671 (7th Cir. 1975), it will be assumed that these attorneys will perform their professional duties.

■ Moreover, OMC is able to protect its own interests. If a conflict of interest does exist, OMC has the right to its own counsel at Liberty Mutual's expense, *Executive Aviation, Inc. v. National Insurance Underwriters,* 16 Cal.App.3d 799, 94 Cal. Rptr. 347, 353–354 (1971), and even in the absence of a direct conflict of interest, OMC cannot be compelled to surrender control of the defense if Liberty Mutual lacks an economic motive for a vigorous defense. *Tomerlin v. Canadian Indemnity Co.,* 61 Cal.2d 638, 39 Cal.Rptr. 731, 737, 394 P.2d 571, 577 (1964).

Even if Liberty Mutual's conduct were to result in adverse judgments against OMC, the latter would suffer direct financial loss only if a judgment exceeded Liberty Mutual's and the excess carrier's policy limits, and even then OMC could assert a claim for the excess if it contended that Liberty Mu-

tual caused the loss of the case or unreasonably refused to settle within the policy limits. Recovery of punitive damages is also possible. See *Richardson v. Employers Liability Insurance Co.,* 25 Cal.App.3d 232, 102 Cal.Rptr. 547, 555–556 (1972). We cannot find in OMC's allegations sufficient likelihood of irreparable injury to justify equitable relief.[4] OMC has cited no case in which the relief it seeks was granted, and we see no reason to extend the availability of prospective relief to this situation.

■ Nor is declaratory relief appropriate. No purpose would be served by a declaratory judgment to the effect that the insurer is obligated to comply with its contract or other obligations imposed by law.[5] *Cf. Public Service Commission of Utah v. Wycoff Co.,* 344 U.S. 237, 244–245, 73 S.Ct. 236, 97 L.Ed. 291 (1952); *Cunningham Brothers Ltd. v. Bail,* 407 F.2d 1165, 1168–1169 (7th Cir. 1969), *cert. denied,* 395 U.S. 959, 89 S.Ct. 2100, 23 L.Ed.2d 745.

The judgment of the District Court is accordingly affirmed, except as provided in Parts I and II, B of this opinion with respect to the claims for relief against Liberty Mutual and Stumbos. As to the latter claims only, the judgment is reversed and remanded for further proceedings consistent with this opinion.

Costs are awarded to defendant Home; the other parties will bear their own costs.

PELL, Circuit Judge, concurring in part and dissenting in part.

Although approving of and concurring in the greater part of the majority opinion, I regard the extent of the reversal as to the Howarth claim as being too narrow and therefore respectfully dissent as to that portion of the opinion only.

The district court dismissed this part of the suit in part because of lack of causal relationship between injury and the alleged

---

4. OMC alleged in its complaint that counsel had failed to apply for protective orders necessary to protect confidential information, but it has not argued on appeal that this form of irreparable injury is present, and we consider the argument to be abandoned.

5. In the District Court, OMC argued that declaratory relief would aid it in determining whether it had the right to assume the defense of the various pending actions, but it has not renewed this argument on appeal, and we take it to be abandoned.

negligence and bad faith. I read the majority opinion as substantially agreeing with this premise although reversing because of the possibility of collateral estoppel becoming involved in the Howarth litigation. I will readily concede that Outboard's efforts to demonstrate causation in the litigation here under review between the Sabich case and the Howarth litigation may be sisyphean. Nevertheless, following firmly established authority that a complaint is not subject to dismissal with prejudice unless it appears to a certainty that no relief can be granted under any set of facts that can be proved in support of its allegations, 5 Wright & Miller, Federal Practice and Procedure: Civil § 1215 at 113 (1969), I am not persuaded that it is proper at this point to deny access permanently by the plaintiff to the base of the hill and to the chance, difficult though the course may be, to engage in the effort of reaching the top.

Construing the pleadings liberally as we must, the following are the factual premises upon which the plaintiff relies in seeking relief under the Howarth counts. But for the negligence and bad faith of Stumbos and Liberty Mutual: the multi-million dollar class action Howarth suit would not have been filed; the attorney who had represented Sabich and who had acquired knowledge and expertise in the matter of product liability exposure of OMC would not have been acting as the lawyer for Howarth; the product would not have been found to have been defectively designed since it was not in fact defectively designed; and the trial record created in the Sabich case will seriously impair OMC's ability to assert successfully the absence of design defects.

In my opinion, the most crucial of these matters is the last one. No matter how often we may express the aphorism that a law suit is a quest for the truth, the fact realistically remains that the trier of fact determines what it believes to be the truth on the basis of the case as it is presented in court which may or may not, dependent upon a number of variables, be the same as the ultimate truth. Admissions of parties which should not have been made because they did not represent the truth but were nevertheless made through inadvertence or misunderstanding will be admitted into evidence and can have a devastating effect. Any experienced trial attorney is aware of the impact created upon a trier of fact when he has to engage in attempting to explain away something detrimental to his client no matter how correct the explanation may be. A key witness not properly acquainted with all of the intricacies of a case because of lack of proper preparation on the subject on which he is to testify may be unuseable as a witness because of the threat of impeachment by inconsistent statements. Unprepared or incompetent counsel may be responsible for stipulations that should not have been entered or positions that should not have been taken. Any lawyer who has retried a case has been painfully aware that factors which were developed in the previous trial, even though they should not have been, cast their shadow on the second case.

The California judicial system will have to take the case as it is presented which will include any matters that may properly be brought from the record of the Sabich trial. This in no way is to cast doubt on the adequacy of that state's judicial system. I cannot agree with the majority that we must presume that the judgment in the Howarth case will be correct if we mean that such a judgment is based upon the ultimate truth of there being a defective product. That might be the case; but it might equally be that the judgment resulted from the influence of that which occurred, but would not have except for the bad faith and negligence of the defendants, in the Sabich trial. I also for the reasons indicated cannot agree with the district court that there could not be a causal relationship between the negligence and the bad faith on the one hand and the Howarth litigation and its impact upon OMC on the other hand.

I agree with the majority that OMC has no legally protected interest in freedom from legal responsibility for wrongdoing.

The complaint which was dismissed, however, alleges that there was no wrongdoing. In today's climate of product liability I do not entertain any idea that very many who have purchased the product in question if it turns out to have been defective will refrain from calling OMC to account. This is a far different situation from being subjected to an action seeking many millions of dollars of compensatory and punitive damages on behalf of every purchaser of the product, a suit which would not have been brought except for the charged misconduct of Liberty Mutual and its attorney.

I have no way of knowing whether the product was or was not defective and express no opinion on that subject. I merely take the position that just as an injured purchaser of the OMC product should be afforded an opportunity of attempting to prove damage from the conduct creating the product, OMC itself, claiming to be an injured purchaser of insurance services, should be afforded an opportunity of attempting to prove damage from the conduct of Liberty Mutual and Stumbos. Faced with a dismissal with prejudice it would appear that the opportunity of doing so will be denied to it as to this substantial part of its claim.